**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Francisco TELLO, Defendant–Appellant.**

**No. 92–7809.**

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1993.

Terry G. Collins, Houston, TX, for defendant-appellant.

Paula C. Offenhauser, Jeffrey A. Babcock, Asst. U.S. Attys., Gaynelle G. Jones, U.S. Atty., Houston, TX, for plaintiff-appellee.

Before JOHNSON, WIENER and DeMOSS, Circuit Judges.

WIENER, Circuit Judge.

Defendant–Appellant Francisco Tello appeals the sentence imposed under the United States Sentencing Guidelines (U.S.S.G.) following his conviction on a plea of guilty to a charge of aiding and abetting possession with intent to distribute marihuana. Tello contests the court's finding under U.S.S.G. § 3C1.1 that he obstructed justice by lying to the probation officer who conducted the presentence investigation. Tello also insists that even though he was awarded the basic 2–level decrease for acceptance of responsibility under § 3E1.1(a) (hereafter, "subsection (a)"), he was unlawfully denied an additional 1–level decrease in his offense level for the *timeliness* of his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b) (hereafter, "subsection (b)").

We find no reversible error in the finding of obstruction of justice, but agree that the court erred as a matter of law in denying Tello the extra 1–level reduction for timely acceptance of responsibility. As we also find that this error cannot be found harmless under the instant circumstances, we vacate Tello's sentence and remand for resentencing.

I

FACTS AND PROCEEDINGS

The relevant facts are essentially undisputed. Following his indictment in Missouri and contemporaneously with the transfer of his case to the Southern District of Texas in accordance with Fed.R.Crim.P. 20, Tello was moved to Texas for the announced purpose of pleading guilty there. He did so immediately upon his arrival in Texas, and was thereafter convicted on the basis of his plea. Routinely, sentencing was deferred pending (1) investigation by the probation department, (2) completion of that investigation, (3) submission to the court of the probation department's presentence investigation report (PSR), and (4) passage of the time allowed for the defendant to consider objecting to the PSR.

During the course of the presentence investigation, the probation officer questioned Tello in the presence of his attorney, asking among other things whether Tello had been arrested previously. The probation officer warned Tello that lying about his prior criminal record could result in increased punishment on grounds of obstruction of justice. Tello admitted to a 1973 conviction but denied that there had been any additional arrests. The latter statement proved to be false when the probation department discovered a record of prior arrests and convictions. Confronted with this information by the probation officer, Tello acknowledged that he had been arrested previously.

As a result of the recommendation in the PSR that Tello's offense level be increased for obstruction of justice, his attorney had Tello undergo an in-depth psychological examination. The examining physician reported that Tello paid little attention to details and might have some difficulty recalling them, concluding that "[i]t appears that [Tello] does seem to forget or lose details of his past life consistent with his cognitive style." The doctor observed that Tello had problems recalling details of his arrest record even when prompted.

The district court gave little credence to Tello's argument that his psychological condition explained his forgetfulness and excused his obstruction of justice. In fact, the doctor's report bolstered the court's conclusion that Tello had not suffered memory loss. The court observed that Tello had furnished extensive information about his entire background to the examining physician. Following the recommendations contained in the PSR, the court increased Tello's offense level by two for obstruction of justice pursuant to § 3C1.1.

Continuing to follow the PSR's recommendations, the court awarded Tello a 2–level decrease in his offense level for acceptance of

responsibility pursuant to subsection (a). The court refused, however, to grant an additional 1–level decrease under subsection (b). The reason given by the court for denying this additional 1–level reduction was Tello's obstruction of justice in lying to the probation officer, thereby causing the investigating officer to expend more time and effort to establish Tello's full record of arrests and convictions than would have been necessary if Tello had been forthcoming.

Consistent with the PSR, the district court determined Tello's offense level to be 24 and his criminal history category to be I. The 2–level increase was assessed for obstruction of justice and the 2–level decrease was awarded for acceptance of responsibility but effectively canceled each other out; and, as the court refused to award the additional 1–level reduction for acceptance of responsibility under subsection (b), Tello's offense level remained at 24. That level, in combination with Tello's criminal history category I, produced a sentencing range of 51 to 63 months on the sentencing table. The court sentenced Tello to a prison term of 57 months, a supervised release term of three years, and a special assessment of $50; and he timely appealed his sentence.

## II

## ANALYSIS

A. *Standard of Review*

■■■■ We review the sentencing court's factual finding of obstruction of justice for clear error.[1] We also review the court's finding on acceptance of responsibility for clear error but "under a standard of review 'even more deferential than a pure clearly erroneous standard.'"[2] A finding is clearly erroneous when, although some evidence

supports the decision, we are "left with the definite and firm conviction that a mistake has been committed."[3] "Review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and was unreasonable."[4]

B. *Obstruction of Justice*

■■■ Section 3C1.1 of the Guidelines directs the sentencing court to increase the defendant's offense level by 2 for obstruction of justice: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."[5] Application Note 3(h) explains that § 3C1.1's enhancement applies when, inter alia, the defendant provides "materially false information to a probation officer in respect to a presentence or other investigation for the court."[6] At the sentencing hearing the court stated:

> [T]he Court is going to find that the Defendant did obstruct justice by providing materially false information to a probation officer who was conducting the Pre–Sentence Investigation Report here in that, when quizzed about prior arrests or convictions, the Defendant left out that he had a prior conviction as recent as 1986, with regards to misdemeanor possession of marijuana, and he left out his prior criminal history as far as in the—juvenile. The Court is going to find that definitely the misdemeanor marijuana conviction was materially false in that it did have to be counted with regards to criminal history category here.

1. *United States v. Ainsworth*, 932 F.2d 358, 362 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 346, 116 L.Ed.2d 286 (1991).

2. *United States v. Watson*, 988 F.2d 544, 551 (5th Cir.1993) (quoting *United States v. Kinder*, 946 F.2d 362, 367 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1677, 118 L.Ed.2d 394 (1992)), *petition for cert. filed,* —— U.S.L.W. —— (U.S. July 29, 1993) (No. 93–5407).

3. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

4. *United States v. Matovsky*, 935 F.2d 719, 721 (5th Cir.1991) (citing 18 U.S.C. § 3742(e)).

5. United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov.1993).

6. U.S.S.G. § 3C1.1 (n. 3(h)).

Given the court's consideration of the PSR, of Tello's objections, of the physician's report, and of all other relevant data, we conclude that the court was not clearly erroneous in its findings of fact. We also conclude that the court correctly interpreted and applied § 3C1.1. We therefore affirm the district court's finding of obstruction of justice and the resulting assessment of a 2–level increase in Tello's offense level.

## C. *Acceptance of Responsibility*

### 1. *2–Level Decrease under § 3E1.1(a)*

Even though the PSR recommended a 2–level *increase* for obstruction of justice, it also recommended a 2–level *decrease* for the basic acceptance of responsibility under subsection (a). The district court agreed, stating:

> The Court will give [Tello] a minus 2 for acceptance of responsibility, although traditionally when there is obstruction of justice, a[n]—acceptance of responsibility is normally not recommended, but in this case he did *early on* agree to go ahead and plead guilty in Rule 20 down here, and the Court is going to proceed to give him the minus 2 . . . .[7]

The court's observation concerning the tension between acceptance of responsibility and obstruction of justice is recognized in the Guidelines:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.[8]

The government does not contest the court's grant of the 2–level reduction for acceptance of responsibility under subsection

(a), apparently agreeing with the court that this is one of those "extraordinary cases" contemplated in that application note. We note in passing that the court's findings as to timeliness—that Tello had demonstrated his acceptance of responsibility "early on" by agreeing to plead guilty, but had not obstructed justice until the final stages of the proceedings, i.e., during the post-plea, post—conviction, presentence investigation stage—will prove central to our analysis of the additional 1–level decrease under subsection (b) which follows.

### 2. *Additional 1–Level Decrease under § 3E1.1(b)*

■ The principal significance of the instant case as one of first impression in this circuit lies in the sentencing court's refusal to award Tello the additional 1–level decrease. Subsection (b) was added to the Guidelines effective November 1, 1992.[9] As recognized implicitly by the government in its vigorous efforts to support the district court's denial of that additional 1–level decrease, the issue here is whether or not subsection (b) is governed strictly by the *timeliness* of the defendant's acceptance of responsibility.[10] Lack of timeliness was obviously not the reason for the district court's denial of the additional 1–level reduction to Tello. Rather, after noting the rarity of its decision to grant simultaneously a 2–level *increase* for obstruction, and a 2–level *decrease* for acceptance, the court stated that it would "definitely not" grant the additional 1–level decrease under subsection (b) "for the reason that there was obstruction of justice here." As shall be shown, however, even though Tello's lying did cause the probation officer to spend additional time investigating Tello's record, that mendacity did not cause the government to

---

7. Emphasis added.

8. U.S.S.G. § 3E1.1 (n. 4).

9. *See* U.S.S.G., App. C, amend. 459.

10. Although Tello had pleaded guilty on October 8, 1992, his PSR was not completed and he was not sentenced until after November 1, 1992, so he was properly sentenced under the version of

the Guidelines in effect at the time of his sentencing, i.e., the version that became effective on November 1, 1992, except to the extent any newly adopted provision would result in an increase in sentence and thereby implicate the proscription of an ex post facto provision of the United States Constitution. *See* 18 U.S.C. § 3553; *United States v. Suarez*, 911 F.2d 1016, 1021 (5th Cir.1990).

prepare for trial or interfere with the court's efficient management of its own calendar.

■ All accept that the defendant bears the burden of proving entitlement to a decrease in offense level for acceptance of responsibility.[11] And, as noted earlier, we review a district court's determination whether a defendant has accepted responsibility by applying a more deferential standard of clear error than usual.[12] But here the fact of timeliness of Tello's plea is indisputable; it is the legal significance of timeliness under new subsection (b), and not the underlying facts, that is here disputed.

This case truly turns on statutory construction, albeit under the Guidelines. Our starting point, therefore, is the unambiguous language of the applicable statute, Guideline § 3E1.1:

§ **3E1.1.** *Acceptance of Responsibility*

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

Prior to November 1, 1992, § 3E1.1 dealt solely with the 2–level reduction which is now contained entirely in subsection (a).[13] Subsection (b), with its additional 1–level reduction, sprang forth full-grown from the 1992 amendments.

The basic acceptance of responsibility mandate is found in the imperative statement that is subsection (a). Although the sentencing court is given considerable latitude in determining whether the defendant has clearly demonstrated acceptance of responsibility, once an affirmative determination of that fact is made, no sentencing discretion remains: Subsection (a) *directs* the sentencer to "decrease the offense level by 2 levels."

Then, but only then, may subsection (b)'s additional 1–level reduction for the *timeliness* of the defendant's acceptance of responsibility be considered: Unless the sentencing court determines that the defendant has accepted responsibility for purposes of subsection (a), subsection (b) simply does not come into play. Here, the court's determination that Tello qualified for the 2–level decrease under subsection (a) opened the door to consideration of subsection (b). Structurally, though, finding the defendant eligible for the 2–level decrease under subsection (a) is the first element of subsection (b)'s tripartite entitlement test.[14]

Paralleling subsection (a)'s imperative, subsection (b)'s tripartite test directs the sentencing court to grant that extra 1–level decrease in the defendant's offense level if three elements are found to co-exist: 1) the defendant qualifies for the basic 2–level decrease for acceptance of responsibility under subsection (a); 2) the defendant's offense level is 16 or higher before reduction for those two levels under subsection (a); and 3) the defendant *timely* "assisted authorities" by taking one—but not necessarily both—of two "steps": either (a) "timely" furnishing information to the prosecution about the de-

---

11. *United States v. Watson,* 988 F.2d 544, 551 (5th Cir.1993), *petition for cert. filed,* —— U.S.L.W. —— (U.S. July 29, 1993) (No. 93–5407).

12. *Id.*

13. *See Guidelines Manual,* App. C, amend. 459.

14. Given the circumstances of the district court's denial of a subsection (b) 1–level decrease to Tello, we are compelled to add that § 3E1.1 contains no concomitant qualifier that a defendant must not have been guilty of obstructing justice; no mention of that at all.

fendant's own involvement in the offense (subsection (b)(1)); or (b) "timely" notifying the authorities that the defendant will enter a guilty plea (subsection (b)(2)). As shall be seen, the "authorities" referred to in subsection (b) are the government as prosecutor and the trial court.

Here, the first two elements of subsection (b)'s three-element test are indisputably present: First, the court found, and the government does not contest, that Tello qualified for a 2–level decrease under subsection (a). Second, Tello's offense level of 24 (before application of such 2–level decrease) clearly exceeds the minimum qualifying level of 16. Only the third element remains to be considered: whether Tello provided the necessary assistance to authorities by taking either or both of the timeliness "steps" defined in subsections (b)(1) and (2).

Neither Tello nor the government adverted to subsection (b)(1)'s "step," i.e., "timely providing complete information to the government concerning [Tello's] own involvement in the offense." Therefore the district court was not required to consider it and neither are we. The district court did not consider subsection (b)(2)'s "step" either, but that step is the main focus of Tello's argument in support of his claim of entitlement to the extra 1–level reduction, just as it is the main focus of the government's argument in support of the sentencing court's denial of that extra 1–level decrease. We therefore examine § 3E1.1(b)(2) microscopically.

In parsing the step defined in subsection (b)(2), we see that it comprises two facets. For a defendant to be "timely" in notifying the "authorities" of his intention to enter a plea of guilty, such notification must occur so "early on" that it 1) permits "the government to avoid preparing for trial," *and* 2) permits "the court to allocate its resources efficiently." Although the court here made a finding of timeliness in reference to its conclusion to "give him the minus 2 [under subsection (a)]," that finding is applicable for all purposes of this case, including both facets of the (b)(2) step. The first of those facets

(trial preparation) is a given: The sentencing court found—and the government does not contest—that Tello "did early on agree to go ahead and plead guilty in Rule 20 down here." That leaves only the second facet for our consideration.

It is on this second facet of the (b)(2) "step" that the government concentrates its regrettably nonsensical arguments. It does so by mischaracterizing—or at least misreading—the Commentary that follows the text of § 3E1.1. Typical of the Guidelines, § 3E1.1's "Commentary" comprises two parts: "Application Notes" and "Background." Only new Application Note 6 addresses new subsection (b)'s new 1–level decrease.

After reiterating the tripartite test, stressing that the "timeliness of the defendant's acceptance of responsibility is … *context specific*," [15] and observing that the "conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur *particularly early in the case*." [16] Application Note 6 equates the *timeliness* of the notification by the defendant of his intention to enter a plea of guilty with the presence of the two functional facets that we have identified in the text of subsection (b)(2): 1) the prosecution's ability to avoid preparation for trial, *and* 2) the court's ability to allocate its resources efficiently. In explaining the first facet, Application Note 6 simply repeats verbatim the text of the Guidelines. But in explaining the second facet, Application Note 6 truly clarifies the meaning of the somewhat elastic phrase, "allocate [the court's] resources efficiently." This phrase, we are told, means that the defendant's notification to authorities of his intention to plead guilty must come "at a sufficiently early point in the process so that … *the court may schedule its calendar efficiently*." [17]

The point we make, somewhat ponderously, is that the timeliness required for the defendant to be entitled to the extra 1–level decrease applies specifically to the governmental efficiency to be realized in two—but only two—discrete areas: 1) the *prosecu-*

---

**15.** U.S.S.G. § 3E1.1 (n. 6) (emphasis added).

**16.** *Id.* (emphasis added).

**17.** *Id.* (emphasis added).

*tion's* not having to prepare for trial, and 2) the *court's* ability to manage its own calendar and docket, without taking the defendant's trial into consideration. Of equal importance in the instant case is that which the timeliness of step (b)(2) does *not* implicate: time efficiency for any other governmental function, including without limitation the length of time required for the probation office to conduct its presentence investigation, and the "point in time" at which the defendant is turned over to the Bureau of Prisons to begin serving his sentence. Yet both of those totally inapposite temporal efficiencies are precisely what the government would have us import interstitially into § 3E1.1. Here's how.

The government starts with the second paragraph of the Background portion of the Commentary under § 3E1.1, which states, in pertinent part

> Subsection (a) provides a 2–level decrease in offense level. Subsection (b) provides an additional 1–level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the steps specified in subsection (b). *Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction.*[18]

The government's narrow focus—out of context and in a vacuum—is on the above-emphasized third sentence of that paragraph. The government equates the ensuring of the certainty of a defendant's just punishment in a timely manner with ensuring that the defendant will *commence to serve* his sentence in a timely manner and that the probation office will not be required to spend an inordinate amount of time verifying the defendant's criminal record. Even out of context, that is an impermissibly strained reading of the sentence. The phrase "in a timely manner" is clearly intended to modify the preceding phrase, *"ensures the certainty* of his just

punishment," not simply the single preceding word, "punishment." More significantly, the government does not notice—or refuses to notice—that nowhere in the sentence do the words *commence* or *serve* appear. Finally, the government does not recognize—or refuses to recognize—that the subject sentence is written in the indicative mood ("Such a defendant *has accepted* responsibility."). It is not written, as the government would read it, in the imperative mood as though it said, "Such a defendant *shall [i.e., 'must also,' or 'is required to']* accept responsibility . . . ."

■ Clearly, then, the third sentence of the second paragraph of the Background does not add another criterion; it makes a declarative statement. It *tells* the sentencing court that a defendant who has satisfied all elements of the tripartite test, including informing authorities of his intent to plead guilty sufficiently early to permit (a) the prosecution to avoid trial preparation, and (b) the court to manage its calendar efficiently, *has* thereby qualified for the additional 1–level reduction. Such a defendant, the subject Background sentence declares to the sentencing court, *has met* (*not* must yet meet) the core purpose of subsection (b), i.e., ensuring "early on" the certainty that the defendant will be justly punished. That purpose is not, as the government would have us believe, concerned at all with *when* the defendant *begins to serve* his sentence; it is concerned with when there is certainty that—sooner or later—the defendant *will be* punished.

■ The subject Background sentence informs the court that a defendant who has satisfied all three elements of subsection (b)'s tripartite test is entitled to—and shall be afforded—an additional 1–level reduction. By no stretch can that sentence be interpreted to specify yet another criterion for entitlement to the decrease, whether it be the timely commencement of serving time, or the efficient management of its calendar by any government agency other than the court— such as probation.

Even though the sentencing court failed to address the elements of the tripartite test,

---

**18.** U.S.S.G. § 3E1.1 (backg'd) (emphasis added).

the government argues that the court's denial of the additional 1–level reduction under subsection (b) "for the reason that there was obstruction of justice here" should be affirmed. The court was correct, insists the government (without citing any supporting authority), because "the extraordinary circumstances of the case warranted a limitation of that reduction." The government attempts to bolster this bald, conclusionary statement by making another: Even though the circumstances "warranted a 2–level reduction" for acceptance of responsibility, argues the government, "Tello's guilty plea was governed not by intent to admit to his criminal behavior in a timely fashion but, rather, as the court found, to conceal the breadth of his criminal conduct. This factor alone supports the district court's refusal to reduce Tello's offense level by 1." We could not disagree more strongly.

First, we cannot stretch the statements of the district court far enough—even by implication—to reach the conclusion, attributed to them by the government, that the "court found" any such thing. Moreover, such a bizarre self-contradictory position would be nonsensical: We cannot imagine that any sentencing court would conclude, on the one hand, that a defendant has rushed to admit criminal conduct for the purpose of concealing the breadth of his criminal behavior, while concluding, on the other hand, that the same defendant has "clearly demonstrate[d] acceptance of responsibility for his offense." [19] Yet this is precisely what the government would have us believe that the district court did here. We find nothing in the transcript of the district court's remarks or elsewhere in the record of this case to support the conclusion that the district court so found, and the government cites us to nothing in support of such a conjecture.

■ Nevertheless, the government proceeds to advance more, equally flawed logic:
> Tello's strict application of § 3E1.1 that ties acceptance of responsibility to the timeliness of the entry of the plea as opposed to the character of the defendant's expression of remorse, *would obligate every district court to automatically reduce offense levels by three whenever a prompt guilty plea was made.*[20]

We are unable to read anything into § 3E1.1, or into Tello's interpretation of it, that "ties acceptance of responsibility to the timeliness of the entry of the plea." To the contrary, the element of timeliness is nowhere to be found in any aspect of the basic 2–level decrease for acceptance of responsibility. In fact, a plea of guilty is not even an essential element of a finding of acceptance of responsibility under subsection (a).[21]

What the government's argument does obfuscate, though, is that timeliness is most certainly an essential aspect of the tripartite entitlement test of subsection (b). In fact, timeliness is the very heart of the third element, assisting authorities. Only if the sentencing court finds—in addition to acceptance of responsibility vel non under subsection (a) and the requisite offense level of 16 or higher—that the defendant *timely* took either or both of the "steps" of subsection (b)(1) and (2), may the court—nay, must the court—award the extra 1–level decrease, thereby, in conjunction with the two levels under subsection (a), bringing the total decrease in levels to three.

Not so for the obverse. For even if the court finds acceptance vel non, mandating a 2–level decrease under subsection (a), as well as an offense level of 16 or higher, the court still need not—nay, must not—award the third 1–level decrease *unless* the court also finds that the defendant assisted authorities by *timely* taking either or both of the "steps" of subsection (b)(1) and (2).

Obviously, then, the government is just plain wrong in arguing that Tello's reading of § 3E1.1 produces an all-or-nothing proposition, i.e., forces the court to award either a 3–level reduction or none. Although there can never be but a single decrease in level for acceptance of responsibility—because subsection (b) is inoperable in the absence of subsection (a)'s 2–level decrease—the converse

---

**19.** U.S.S.G. § 3E1.1(a).

**20.** Emphasis added.

**21.** *See* § 3E1.1, comment. (n. 2).

is not true: There can be (and frequently will be) a 2–level decrease under subsection (a) without the extra 1–level decrease being required or awarded under subsection (b). Thus, depending on all of the relevant facts, including timeliness, there could be a 3–level, or a 2–level, or a "0"–level decrease for acceptance of responsibility.

More significant than its failed effort to pillory Tello's argument is the government's failure to cite any authority in support of the sentencing court's obstruction-of-justice reason for denying Tello the additional 1–level decrease under subsection (b). The explanation for this citational void is simple: There is no such authoritative support to be found. Nowhere in the Guidelines or their Commentaries, nor in the jurisprudence, is there any authority for the court to deny the subsection (b) decrease on grounds of obstruction of justice, particularly when, as here, the court has expressly elected not to deny the basic subsection (a) decrease on grounds of obstruction.

We hold that the district court erred in the *reason* given for denying the extra 1–level reduction of subsection (b)—obstruction of justice. First, that is simply inapposite; as long as obstruction does not cause the prosecution to prepare for trial or prevent the court (as distinguished from the probation office) from managing its calendar efficiently, obstruction of justice is not an element to be considered. When the court granted Tello the basic 2–level reduction for acceptance of responsibility under subsection (a), despite having found obstruction of justice and having increased his offense level by two therefor, obstruction became irrelevant. It evaporated from the sentencing calculus.

Nothing in the structures of § 3E1.1 or § 3C1.1 contemplates, much less authorizes, such an internally inconsistent position as finding basic acceptance despite subsequent obstruction, then denying the extra "timeliness" decrease by reason of the self same,

late-in-the-game obstruction.[22] Nonetheless, the court's denial for that reason is not fatal if there is some other reason to be found that supports denial.

██ We may always affirm a district court's ruling, made for an invalid reason, if we are shown or can find a valid reason to support that ruling.[23] Having found the obstruction of justice reason given by the district court for denying Tello the 1–level reduction to be invalid, we may affirm that denial only if we can discover some fallacy in our perception that Tello also satisfied the third element of that test—the timely taking of either or both of the steps identified in subsections (b)(1) and (2). As (b)(1) is not at issue here, our consideration is narrowed to the remaining "step," the one defined in subsection (b)(2). Only if the facts found by the court or reflected in the record demonstrate that Tello did *not* properly take the subsection (b)(2) step, we may affirm the district court's denial of the extra 1–level decrease, albeit for a reason other than the invalid one advanced by that court. But, as we have seen, such facts show beyond cavil that Tello did take that "step" properly.

Moreover, those same facts preclude our ability to affirm the district court's denial of the extra 1–level reduction, for any reason. The one expressed by the district court is simply not authorized by the Guidelines, either implicitly or explicitly, particularly not in the text of § 3E1.1 or the Commentary thereto. And any fair and reasonable reading of those provisions, even in *pari materiae* with the obstruction provisions of § 3C1.1, demonstrates beyond serious question that, given the court's basic finding of acceptance of responsibility for purposes of subsection (a), no alternative reason can be found under the instant facts to justify our affirming the district court's denial of the extra 1–level decrease under subsection (b).

Moreover, the final clause of subsection (b) eschews any court discretion to deny the

---

**22.** This is not to say that, under greatly different circumstances, obstruction of justice could not constitute discretionary grounds for denying the additional 1–level decrease, such as when the defendant *first* obstructs justice in the investigation of his offense and only *subsequently* admits his guilt and cooperates with the government.

*See, e.g., United States v. Booth,* 996 F.2d 1395, 1397 (2d Cir.1993).

**23.** *Bickford v. International Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981).

reduction. That imperative clause *directs* the sentencing court to "decrease the offense level by 1 additional level," once all the essential elements and steps and facets of the tripartite test of subparagraph (b) are found to exist. We conclude, therefore, that the district court erred in denying that additional 1–level decrease in Tello's offense level for the reason given; that no alternate reason exists as a basis for affirmance by this court and that Tello's sentence therefore must be reversed—absent a finding of harmless error.

### 3. *Harmless Error*

■ Rule 52(a) of the Federal Rules of Criminal Procedure provides:

**Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.[24]

The statutory framework for reviewing sentences under the Guidelines is set forth in 18 U.S.C. § 3742, which provides in pertinent part:

"If ... the sentence was imposed ... as a result of an incorrect application of the sentencing guidelines, the court *shall remand* the case for further sentencing proceedings with such instructions as the court considers appropriate."[25]

This statutory provision certainly reads like a per se rule. If it were, it would pretermit review for harmless error and mandate automatic reversal and remand upon the finding of a sentencing error resulting from an incorrect application of the Guidelines. The United States Supreme Court, in *Williams v. United States,*[26] did not read § 3742 that restrictively. In fleshing out § 3742 by explaining the meaning of the phrase "as a result of an incorrect application," the Court rejected a rule of automatic reversal and adopted instead a form of harmless error

analysis. The Court pronounced that the finding of an incorrect application of the Guidelines shifts the burden to the proponent of the sentence—whether that be the defendant or the government—to "persuade [ ] the court of appeals that the district court would have imposed the *same sentence* absent the erroneous factor."[27] In a case of the same name, albeit transposed, we applied the Court's *Williams* standard in determining generally whether a misapplication of the Guidelines automatically requires remand for resentencing.[28] The precise type of Guidelines sentencing error case that we review today—one in which the term of the sentence of imprisonment actually imposed by the court's application of the *wrong* sentencing range (here, 57 months), coincidentally happens to be available for imposition by applying the *correct* sentencing range—is one of first impression in this circuit. The question is whether the availability of the identical number of months of incarceration in both the correct and incorrect sentence ranges ("same sentence") automatically makes the error harmless, thereby avoiding automatic vacatur and remand.

Albeit res nova in this circuit, a virtually identical situation was addressed by the Eleventh Circuit in *United States v. Alpert.*[29] There the district court had imposed a prison term selected from a sentencing range wrongly determined due to an error in assessing a 2–level increase for obstruction of justice. But coincidentally, like the number of months assessed to Tello, the number of months assessed in *Alpert* happened to be available under both the correct and incorrect sentencing ranges.[30] As *Alpert* was decided after the Supreme Court decided *Williams v. United States,* and as the *Alpert* court reversed and remanded despite the availability of the "same sentence" under both the correct and incorrect sentencing range, we infer that the party interested in

24. Fed.R.Crim.P. 52(a).

25. 18 U.S.C. § 3742(f)(1) (emphasis added).

26. —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

27. *Id.,* —— U.S. at ——, 112 S.Ct. at 1121, 117 L.Ed.2d at 354–55 (emphasis added).

28. *United States v. Williams,* 961 F.2d 1185, 1187 (5th Cir.1992).

29. 989 F.2d 454 (11th Cir.1993).

30. *Alpert,* 989 F.2d at 458 n. 2.

sustaining the sentence and avoiding remand (there, as here, the government) failed to proffer sufficiently persuasive evidence to convince the appellate court that the district court would have imposed the same sentence, absent the error.

This court too has employed a "same sentence" test in connection with several Guidelines issues differing only slightly from the one now before us. In *United States v. Corley*,[31] when the district court erroneously calculated the defendant's criminal history *score*, we vacated and remanded for resentencing even though the erroneous score did not prevent the defendant from being placed in the correct criminal history *category*.[32] As the district court in *Corley* had departed upward, we concluded that the error was not harmless. We reasoned that the extent of the court's upward departure might have been influenced by the erroneously high criminal history score.

We also remanded for resentencing in *United States v. Williams*[33] when the district court improperly based its sentence for revocation of parole on conduct occurring after the original sentence. We rejected the government's "same sentence" harmless error argument based on the severity of the defendant's criminal history, noting that the record indicated that the sentencing court had not been receptive to enhancing the defendant's sentence based on the criminal history factor.[34]

In two other similar but different "same sentence" cases, however, we concluded that incorrect applications of the Guidelines were harmless. In *United States v. Johnson*,[35] in which the district court had erroneously added two points to the defendant's criminal history score,[36] we found the error harmless; at sentencing the court's focus had been on facts other than the ones involved in the erroneous criminal history calculation.[37]

And—unlike the instant case—the error in *Johnson* did not produce an incorrect Guidelines sentencing range.[38]

In *United States v. Davidson*,[39] we found an erroneously reasoned upward departure harmless when we recognized that the record clearly disclosed a different, valid basis for such a departure. We concluded that the district court almost certainly would have departed upward, and just as certainly would have arrived at the same sentence, had it referred to the valid rather than invalid basis for upward departure. The record in *Davidson* revealed that the valid departure basis was in fact a primary factor in the district court's upward departure; the court had continually referred to the valid ground when justifying the upward departure, itself a mere three months.[40]

Tello's sentencing range as determined by the court when it erroneously resorted to the sentencing table for offense level 24 and criminal history category I was 51 to 63 months. The court imposed a prison term of 57 months, precisely in the middle of the wrong range. Had the court granted the additional 1-level decrease that we found it should have granted, Tello's correct offense level would have been 23 which, coupled with his correct criminal history category of I, would have produced a sentencing range of 46 to 57 months. Even though the "same sentence" of 57 months falls within both the correct and incorrect sentencing ranges, 57 is the exact midpoint of the erroneous range but is the topmost sentence of the correct range. In assessing Tello's sentence, the court said only that:

> [Tello's] guideline range sentence in his case is 51 to 63 months. The court is going to sentence the Defendant to the custody of the Bureau of Prisons for 57 months.

31. 978 F.2d 185, 186–87 (5th Cir.1992).

32. *Corley*, 978 F.2d at 186–87.

33. 961 F.2d 1185 (5th Cir.1992).

34. *Williams*, 961 F.2d at 1187.

35. 961 F.2d 1188 (5th Cir.1992).

36. *Johnson*, 961 F.2d at 1189.

37. *Id.* at 1190.

38. *Id.* at 1189.

39. 984 F.2d 651 (5th Cir.1993).

40. *Davidson*, 984 F.2d at 657.

That simple, antiseptic comment reveals nothing about the court's thought process in selecting 57 months or the fact that it was the mid-range position in the incorrect sentencing range. The government, as the party with an interest in preserving the "same sentence" under a harmless error analysis, has not directed us to anything in the record—and we have found nothing independently—that might persuade us, in administering the Supreme Court's *Williams* test, that the district court would have imposed the same 57 months' sentence absent the error. We therefore must follow *Williams* by vacating the sentence imposed and remanding for resentencing within the correct sentencing range of 46 to 57 months.

Thus the rule we adopt today is that even when the number of months of a prison sentence that is imposed as a result of an incorrect application of the Guidelines is also a number of months that properly could be imposed by a correct application of the Guidelines, i.e., when the same sentence is included in both the correct and incorrect sentencing ranges, the sentence must nevertheless be vacated and the case remanded for resentencing; *unless*, that is, we are persuaded—either by the party seeking to uphold the sentence through application of the harmless error analysis, or by our own independent review of the record—that the "district court would have imposed the same sentence absent the erroneous factor." [41] Only if we were so persuaded could we affirm the sentence originally imposed.[42]

As sentence selection from within the appropriate sentencing range lies uniquely within the broad discretion of the sentencing court, we recognize the distinct possibility that the district court might again impose on Tello the same 57–month sentence it originally imposed. We observe only that we have neither found nor been shown anything in this record so clearly reflecting the sentencing motivation of the district court that would permit us to conclude that the same sentence

would have been assessed absent the error. Lacking such a determination, we cannot affirm the original sentence under a harmless error analysis.

### III

### *CONCLUSION*

In finding obstruction of justice, the district court did not clearly err when it rejected Tello's explanation for his failure to tell the probation officer about prior arrests and convictions. We therefore affirm the court's assessment of a 2–level increase under § 3C1.1.

Neither did the court err in finding that Tello clearly demonstrated acceptance of responsibility for his offense, or in concluding that Tello's is one of those "extraordinary cases" contemplated by Application Note 4 to § 3E1.1, in which a defendant both accepts responsibility and obstructs justice, and is thus properly allowed a decrease in offense level for the former while being assessed an increase in offense level for the latter.

Nevertheless, the district court did err in refusing to grant Tello an additional 1–level decrease under § 3E1.1(b) after thus finding him entitled to the 2–level decrease under § 3E1.1(a). Tello's offense level was 24 before allowance of the 2–level decrease under subsection (a) and was thus 16 or greater; and, on the basis of facts found by the court and apparent from the record, Tello assisted authorities in the prosecution of his own misconduct by notifying them of his intention to enter a plea of guilty sufficiently early in the process to permit the government to avoid preparing for trial and the court to schedule its own calendar efficiently.

In the face of those uncontroverted facts and circumstances, we find unavoidable the conclusion that the sentencing court incorrectly interpreted and applied the Guidelines as to the extra 1–level decrease in offense level under subsection (b). Having found

41. *United States v. Williams*, 961 F.2d 1185, 1187 (5th Cir.1992); *Williams*, —— U.S. ——, ——————, 112 S.Ct. 1112, 1121, 117 L.Ed.2d at 354–55 (1992).

42. There is a third possibility: Under unusual circumstances, we may modify the sentence orig-

inally assessed and, as modified, affirm rather than remand. We found such circumstances to be present and took such action today in *United States v. Mills*, 9 F.3d 1132.

that Tello accepted responsibility "early on" for purposes of subsection (a)—despite his obstructing justice thereafter during the presentence investigation—the court was not authorized by the Guidelines to deny an additional 1–level decrease under subsection (b) on the grounds of obstruction of justice. Neither can we find any other reason on the basis of which the court's denial can be salvaged. So, even though we are authorized to affirm a district court's proper conclusion reached on the wrong reason if a correct reason exists, we have been shown no correct reason for affirming the court in this case and have been unable to find one on our own.

Finally, even though such erroneous denial of subparagraph (b)'s decrease could be sustained if its effects were harmless, we find no harmlessness here. We cannot affirm as harmless the sentence erroneously imposed on Tello by misapplication of the Guidelines, despite that "same sentence" being available under the correct sentencing range. For here there is no persuasive evidence that the court would have assessed the same sentence, absent error.

For the reasons set forth above, Tello's sentence is VACATED and this case REMANDED to the district court to resentence Tello within the range of 46 to 57 months. In all other respects the sentence imposed by the district court is

AFFIRMED.