**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-50564

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

TERRY S. HUSKEY,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Texas
March 17, 1998

Before REYNALDO G. GARZA, DUHÉ and STEWART, Circuit Judges
JOHN M. DUHÉ, JR., Circuit Judge:

Defendant-Appellant Terry Huskey ("Huskey") appeals the district court's calculation of his sentence. For the reasons that follow, we find that the district court did not commit clear error in assessing the amount of marijuana attributable to Huskey. But, because we find that the district court erroneously calculated Huskey's criminal history score, we must remand for resentencing.

#### BACKGROUND

Huskey pled guilty to conspiracy to possess marijuana with intent to deliver, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Huskey had been a member of an organization

that, from 1992 to 1996, trafficked large amounts of marijuana across the country.

Huskey was sentenced in June, 1997. In calculating Huskey's criminal history score under U.S.S.G. §§ 4A1.1-.2, the district judge relied on two prior sentences, imposed by a Kansas state court, for theft and attempted possession of cocaine. Those sentences arose from the following events.

On February 9, 1990, Kansas police found 21 stolen antique guns in the trunk of a vehicle owned by Huskey's wife. Police also found marijuana, marijuana cigarettes and cocaine in Huskey's residence. Huskey was charged with theft, possession of marijuana, and attempted possession of cocaine. All three charges were presented in the same criminal information under cause number 90-CR-0292; there was, however, no formal order consolidating the charges. Huskey was sentenced for all three counts on the same day and given one year imprisonment for the marijuana offense, one to five years imprisonment for the cocaine offense, and one to three years imprisonment for the theft offense, with the sentences to run concurrently. The Kansas records do not indicate that separate judgments with separate numbers were issued. Huskey was released and placed on probation for the offenses on September 3, 1992, and finally discharged on November 8, 1993.

In sentencing Huskey for the instant offenses, the district judge found that the Kansas sentences had been imposed in "unrelated cases." See U.S.S.G. § 4A1.2(a)(2). Thus, the judge assessed Huskey criminal history points separately for *each* Kansas

2

offense[1] -- three for the cocaine and three for the theft. <u>See</u> U.S.S.G. § 4A1.1(a).[2] Three additional points were added to that subtotal because Huskey engaged in the charged drug conspiracy while he was under state sentences and after his release from imprisonment on those same sentences. <u>See</u> U.S.S.G. §§ 4A1.1(d) and (e). The judge thus assessed a total of nine criminal history points to Huskey, placing him in criminal history category IV. <u>See</u> Sentencing Table, Ch.5 Pt.A. Based on the amount of marijuana found attributable to Huskey (<u>see</u> U.S.S.G. § 1B1.3; <u>see also</u> discussion <u>infra</u> at II) and various other adjustments, Huskey's offense level was computed to be 33 (<u>see</u> U.S.S.G. § 2D1.1(a)), with a corresponding category IV range of 188-235 months. Huskey was sentenced to 192 months.

**DISCUSSION**

I.

Huskey contends that the Kansas sentences were imposed in "related cases" and therefore should not have been counted separately in assessing criminal history points. He argues that, because the three charges were presented in the same criminal information under the same docket number, the sentences therefore "resulted from offenses that ... were consolidated for trial or

_____

[1]"Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of §4A1.1(a), (b), and (c)." U.S.S.G. §4A1.2(a)(2).

[2]No criminal history points were added for the marijuana offense. <u>But see</u> U.S.S.G. § 4A1.1(b). As our disposition of the question will make clear, however, we need not decide whether this was error. <u>See</u> discussion <u>infra</u> at I(A).

3

sentencing." U.S.S.G. § 4A1.2, comment. (n.3). Huskey, then, argues he should only have had six criminal history points, placing him in category III with a range of 168-210 months. See Sentencing Table, Ch.5 Pt.A.

We accept district court fact findings relating to sentencing unless clearly erroneous, but we review *de novo* application of the guidelines. United States. v. Fitzhugh, 984 F.2d 143, 146 (5th Cir. 1993). We review the district court's determination of relatedness under § 4A1.2(a)(2) *de novo*. Id. at 146-47; see also United States v. Garcia, 962 F.2d 479, 481 (5th Cir. 1992).

## A.

As stated above, in computing criminal history points, prior sentences in unrelated cases are counted separately; prior sentences in related cases are treated as one sentence. See U.S.S.G. § 4A1.2(a)(2). The guidelines commentary observes that:

> [p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, comment. (n.3). The cocaine and the stolen weapons were merely *discovered* on the same day by the Kansas police; there is no evidence in the record from which we can deduce that the offenses either "occurred on the same occasion" or were "part of a single common scheme or plan." Thus, for Huskey to prevail, the offenses must have been "consolidated for trial or

4

sentencing" within the meaning of § 4A1.2, comment. (n.3).

We have never squarely addressed in this Circuit whether, absent a formal order of consolidation, charging separate offenses in the same information under the same docket number nonetheless "consolidates" the offenses and thereby makes them "related" under § 4A1.2(a)(2). Language from our prior cases is instructive, however.

In <u>United States v. Metcalf</u>, 898 F.2d 43 (5th Cir. 1990), we rejected the defendant's argument that his sentences for two prior burglaries were related under § 4A1.2(a)(2) because they ran concurrently and were imposed on the same day. <u>Id</u>. at 45-6. Judge King wrote that:

> ... in <u>United States v. Flores</u>, we rejected an assertion that cases are consolidated for sentencing under the Guidelines "[s]imply because two convictions have concurrent sentences." Moreover, we do not believe that sentencing on two distinct cases on the same day necessitates a finding that they are consolidated. *Here, the 1982 and 1983 offenses proceeded to sentencing under separate docket numbers and there was no order of consolidation.*

<u>Id</u>. at 46 (citations omitted)(emphasis added).

We confronted a similar argument in <u>United States v. Gipson</u>, 46 F.3d 472 (5th Cir. 1995). There the defendant argued that his seven prior robbery convictions were related under § 4A1.2(a)(2) because they were all "sustained" on the same day in the same judgment of conviction. <u>Id</u>. at 476. Rejecting that contention, Judge Smith observed:

> [a]ll but two of the robberies had *separate case numbers* when they went to trial and

5

> judgment, which indicates that at most the two robberies sharing the same case number had been consolidated for judgment.

Id. (emphasis added). See also United States v. Ainsworth, 932 F.2d 358, 361 (5th Cir. 1991).

Thus, *dicta* from our case law strongly imply that offenses charged under the same docket number have been "consolidated" even absent a formal order of consolidation. Sentences for such charges therefore proceed from "related cases" within the meaning of § 4A1.2(a)(2). Decisions from other Circuits provide further support for that position.

In United States v. Alberty, 40 F.3d 1132 (10th Cir. 1994), the Tenth Circuit was called upon to decide whether the defendant's two prior juvenile offenses were related because he was sentenced to identical concurrent terms on the same day. Id. at 1134. The record was unclear as to whether there had been a formal order consolidating the charges. Id.

The court began its analysis by observing that prior offenses are generally considered related when an "express judicial order of either consolidation or transfer" brings them before the same court. Id., citing United States v. Chapnick, 963 F.2d 224, 229 (9th Cir. 1992), and United States v. Delvecchio, 920 F.2d 810, 812 (11th Cir. 1991). The court observed, however, that, under its own precedent, a formal judicial order was "sufficient, but not necessary, to permit a finding that prior cases were 'consolidated for sentencing.'" Alberty, 40 F.3d at 1134, citing United States v. Gary, 999 F.2d 474, 479-80 (10th Cir. 1993), and United States

<u>v. Villareal</u>, 960 F.2d 117, 119-21 (10th Cir. 1992). Without addressing what other circumstances might lead to a finding of "relatedness," the court found that Alberty had not demonstrated that his two prior offense were related. <u>Alberty</u>, 40 F.3d at 1135. Primarily, the court relied on the sentencing judge's finding that the two juvenile convictions were handled on the same day merely for judicial convenience. <u>Id</u>.[3] But the court added:

> Moreover, the fact that Mr. Alberty received concurrent sentences on both offenses does not mandate a contrary finding ... *especially when the two charges retained separate docket numbers*.

<u>Id</u>. (citations omitted)(emphasis added).

In <u>United States v. Stalbaum</u>, 63 F.3d 537 (7th Cir. 1995), the Seventh Circuit considered whether three prior misdemeanors for which the defendant had been sentenced to identical concurrent terms in the same proceeding were related. <u>Id</u>. at 538. As in <u>Alberty</u>, <u>supra</u>, there was no formal order of consolidation. <u>Id</u>. The court noted initially that the Seventh Circuit had already rejected the government's position that a formal order of

---

[3]The court seemed to be reviewing the district court's factual determinations regarding relatedness under a "clearly erroneous" standard. <u>Id</u>.("In this case, however, even in the absence of a formal order, the district court's finding that Mr. Alberty's two prior offenses were unrelated is not clearly erroneous."). Earlier, the court had observed that while it would use the clearly erroneous standard for factual determinations, it would "exercise plenary review over the district court's legal conclusions regarding the application and interpretation of the Guidelines." <u>Id</u>. at 1133 (citations omitted). We do not take issue with the standard of review employed in <u>Alberty</u>, however; we merely observe that our Circuit has before struggled with the appropriate standard to use when reviewing a district court's determination of "relatedness," but has found that our precedent impels a *de novo* review. <u>See</u> <u>Garcia</u>, 962 F.2d at 481 & n.6.

consolidation was a prerequisite to finding prior offenses related. _Id_. at 539, _citing_ _United States v. Joseph_, 50 F.3d 401, 403 (7th Cir. 1995). But the court added that, lacking a formal consolidation order, a defendant would be required to "show[] on the record of the sentencing hearing that the sentencing judge considered the cases sufficiently related for consolidation and effectively entered one sentence for the multiple convictions." _Stalbaum_, 63 F.3d at 539, _citing_ _United States v. Russell_, 2 F.3d 200, 204 (7th Cir. 1993).

The _Stalbaum_ court partly relied on the fact that the defendant's prior offenses retained separate docket numbers as evidence that the sentencing judge did not intend to consolidate the offenses. _Stalbaum_, 63 F.3d at 539. The court reasoned that:

> the sentencing judge retained each case's docket number and assessed a separate sentence for each case. If he had considered them consolidated (and wanted them to appear that way on the record), _he would have assigned one docket number_ for this sentencing hearing and assessed to Stalbaum one sentence.

_Id_. at 539-40 (emphasis added). _See also_ _id_. at 539 ("As we pointed out, each case retained its own docket number, and Stalbaum received a separate, albeit concurrent, sentence for each crime."). The court thus found that the mere fact of concurrent sentences being imposed in the same proceeding would not generate an inference that the offenses had been effectively consolidated. _Id_. At the same time, the court implied that merging separate offenses under the same docket number might do so. _Id_. at 539-40.

Finally, in _United States v. Allen_, 50 F.3d 294 (4th Cir.

8

1995), the Fourth Circuit considered whether factually unrelated offenses for which a defendant received in the same proceeding separate, concurrent sentences are related, absent a formal order of consolidation.  Id. at 295.  The court held that charges must be "formally consolidated or [must] be joined in an indictment" to be considered related under § 4A1.2(a)(2).  Id. at 299.  This bright-line rule, reasoned the court, would vindicate two important policies of the Sentencing Guidelines:  to provide "reasonable uniformity in sentencing" and to impose substantial prison terms on repeat felony offenders.  Id. at 297-98, citing, *inter alia*, U.S.S.G. Ch.1 Pt.A, intro. comment. (n.3).  The court observed that a formal consolidation requirement would insure that only offenses with some factual relationship would be considered "consolidated for trial or sentencing."  Those offenses would therefore "have some relationship to each other beyond the happenstance of simultaneous sentencing."  Id. at 298; see U.S.S.G. § 4A1.2, comment. (n.3).

The court did not specifically consider whether charges bearing the same docket number would satisfy its "formal consolidation" test.  The court did allude, however, not only to "charges ... formally consolidated" but also to "charges ... joined in an indictment."[4]  Allen, 50 F.3d at 299.  Earlier, when

---

[4]The Allen court, however, seemed to equate "consolidation" under Application Note 3 to U.S.S.G. § 4A1.2 with "joinder" under FED.R.CRIM.P. 8.  Thus, to find two offenses "joined in the same indictment," the court would have required that the offenses be "of the same or similar character or [be] based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  Allen,

9

summarizing the procedural history of Allen's prior convictions, the court stated that "[t]he state court did not enter an order consolidating Allen's charges for trial or sentencing *and the charges proceeded to sentencing under separate docket numbers*." Id. at 296 (emphasis added). Arguably, then, merging separate offenses under the same docket number is tantamount to "formal consolidation" and would therefore satisfy Allen.[5]

Guided by the reasoning of our precedent and of other Circuits, we conclude that Huskey's prior Kansas convictions were *de facto* "consolidated" by virtue of the fact that the charges appeared in the same criminal information under the same docket number. The sentences for those convictions therefore arose from "related cases" within the meaning of U.S.S.G. § 4A1.2(a)(2) and should not have been counted separately in determining Huskey's criminal history score. The district court erred in doing so. Huskey should have been assessed six criminal history points,

---

50 F.3d at 298; see FED.R.CRIM.P. 8(a). The Allen court thus interpreted the three categories of "relatedness" set out in Application Note 3 to § 4A1.2 as "requiring either a factual relationship between prior offenses" or a "consolidation order" tantamount to a Rule 8(a) joinder. See Allen, 50 F.3d at 297.

[5]See also United States v. Lopez, 961 F.2d 384, 386 (2d Cir. 1992)("It is undisputed that the two offenses were *assigned separate docket numbers* and were not subject to a formal order of consolidation."); United States v. McAdams, 25 F.3d 370, 374-75 (6th Cir. 1994)(relying, *inter alia*, on fact that all prior cases "each bore an individual indictment number" in finding them unrelated.); United States v. McComber, 996 F.2d 946, 947 (8th Cir. 1993)("sentences are not related for purposes of § 4A1.2(a)(2) if the cases proceeded to sentencing *under separate docket numbers*, and there was no formal order of consolidation."); United States v. Davis, 922 F.2d 1385, 1390-91 (9th Cir. 1991)(fact that cases did not share single docket number was one indication that cases were not "consolidated for sentencing.")(emphasis added).

10

placing him in Category III.  <u>See</u> Sentencing Table, Ch.5 Pt.A.

In sum, under our current law, neither of the following will result in factually distinct offenses being considered related under U.S.S.G. § 4A1.2(a)(2): sentencing on the same day and/or in the same proceeding (<u>Metcalf</u>, 898 F.2d at 46); imposition of identical, concurrent sentences (<u>Ainsworth</u>, 932 F.2d at 361; <u>Flores</u>, 875 F.2d at 1114).  What we hold today is that when factually distinct offenses are charged in the same criminal information under the same docket number, those offenses have been "consolidated" (even in the absence of a formal consolidation order) and are therefore related.  Sentences flowing from such consolidated cases should not be counted separately under §§ 4A1.1-.2.

We believe these parameters adequately further the twin goals of the Sentencing Guidelines as enunciated by the <u>Allen</u> court, <u>supra</u>: to provide reasonable uniformity in sentencing and to impose harsher punishments on defendants with especially checkered criminal histories.  <u>See</u> <u>Allen</u>, 50 F.3d at 297; U.S.S.G. Ch.1, Pt.A, intro. comment. (n.3).  Under our interpretation of Application Note 3 to § 4A1.2, a finding that prior cases were "consolidated" will require either some factual connexity between them, or else a finding that the cases were merged for trial or sentencing.  <u>See</u> <u>United States v. Watson</u>, 952 F.2d 982, 990 (8th Cir. 1991).[6]

---

[6]"The circumstances described by the first and second elements of Application Note 3 to [§] 4A1.2 depend on the character of a defendant's criminal conduct.  Therefore, they are distinct from

11

Although we applaud <u>Allen</u>'s persuasive reasoning, we do not choose to adopt its *per se* rule that a formal order of consolidation is, in every case, a prerequisite to finding "consolidation." <u>See</u> <u>Allen</u>, 50 F.3d at 298. While the <u>Allen</u> rule would be easier to apply, we are not confident that it would be supported by the varied methods of criminal docket management found in state courts.[7] We are simply not convinced that a state judge will enter a formal consolidation order every time he intends to treat two separate offenses as one. There are other ways a district court can discern a state judge's intention to do so; we have merely identified one today -- merging two or more separate offenses under a single docket number.

## B.

The government argues that, even if the district judge erred by not placing Huskey in category III, the error was harmless. The government correctly points out that Huskey's 192-month sentence would also fall within the correct category III range of 168-210 months.[8] Given the overlap in the two ranges, and the lack of

---

the third element, whose relevance depends upon whether the determination of guilt or the imposition of punishment for two or more of the defendant's prior offenses were combined." <u>Watson</u>, 952 F.2d at 990.

[7]Additionally, in at least one case we implied that some form of "informal consolidation" might be sufficient under § 4A1.2, if supported by state law. <u>See</u> <u>United States. v. Velazquez-Overa</u>, 100 F.3d 418, 423-24 (5th Cir. 1996), <u>cert denied</u>, 117 S.Ct. 1283 (1997)(considering whether Texas law allows "informal consolidation" of offenses).

[8]Huskey was sentenced under a category IV range of 188-235 months, at an offense level of 33. <u>See</u> Sentencing Table, Ch.5 Pt. A.

evidence that the district judge would have sentenced Huskey to anything other than 192 months, the government contends that any error in calculating his criminal history score does not necessitate a remand for resentencing.

The Supreme Court has held that, when a court incorrectly applies the sentencing guidelines, the proponent of the sentence bears the burden of demonstrating that "the district court would have imposed the *same sentence* absent the erroneous factor." Williams v. U.S., 503 U.S. 193, 203 (1992)(emphasis added); see also 18 U.S.C. § 3742 (West 1985 & West Supp. 1998). In United States v. Tello, 9 F.3d 1119 (5th Cir. 1993), we applied Williams to a situation similar to the present one -- i.e., where the actual sentence imposed was included in both the correct and the erroneous guideline ranges. Id. at 1129. We stated that the proponent of a sentence imposed under an erroneous guideline range must, to avoid remand, "proffer sufficiently persuasive evidence to convince the appellate court that the district court would have imposed the same sentence, absent the error." Id. at 1129-30, citing Williams, 503 U.S. at 202-03.

In Tello, the defendant had been sentenced to 57 months, exactly in the middle of the erroneous range of 51 to 63 months. Id. at 1130. The *correct* guideline range, however, was 46 to 57 months. Id. The actual sentence thus fell within *both* ranges, but at the top of the correct range. In sentencing the defendant, the district court only stated the range it was relying on and the sentence it was imposing. Id. We found that the district judge's

13

"simple, antiseptic comment[s]" did nothing to illuminate *why* he imposed the particular sentence and, hence, did not support the government's position that he would have levied the *same* sentence had no error occurred. Id. at 1130-31. We thus declined to deem the error in Tello "harmless," and remanded for resentencing, fully aware that the district judge might impose the same 57-month sentence on remand. Id. at 1131.

In support of leaving Huskey's sentence undisturbed, the government points out that his 192 months break down into sixteen twelve-month intervals and that the judge could have sentenced Huskey to the lowest end of the erroneous range (188 months) but did not do so. Hence, posits the government, it is "obvious the district court had a particular sentence in mind within the applicable guideline range which it assessed." We must disagree.

Mere speculation as to the sentencing judge's motives will not meet the burden imposed by Williams and Tello, supra, on the proponent of the sentence. The government must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made in arriving at the defendant's guideline range.[9] Nothing in the record of Huskey's sentencing hearing supports the government's contentions.

Nor does our independent review of the record reveal a basis

---

[9]See Tello, 9 F.3d at 1131 ("That simple, antiseptic comment reveals nothing about the court's thought process in selecting 57 months or the fact that it was the mid-range position in the incorrect sentencing range.").

for affirming Huskey's sentence.  In sentencing Huskey, the district judge only stated that he had reviewed the record, the PSR and the  other factors "required ... under the Sentencing Reform Act of 1984."  He then imposed the 192-month sentence without further comment.

We write none of this to impugn the sentencing judge's handling of Huskey's sentencing hearing.  Indeed, a review of the hearing transcript plainly shows that the judge carefully considered the arguments of counsel and arrived at a reasonable, common-sense resolution of the "relatedness" issue.[10]  The judge's "error" was simply the fruit of unusual circumstances, combined with a gap in the case law interpreting an opaque provision of the sentencing guidelines.  See, e.g., Stalbaum, 63 F.3d at 539 ("We pause here to note the difficulty we encounter in applying this provision [§ 4A1.2] and its 'application note.'").

Nonetheless, we can find no evidence in the record that convinces us the trial judge would have imposed the *same* sentence, absent the error in calculating Huskey's criminal history score. We must therefore remand the case for resentencing, cognizant that the district judge may, in his discretion, impose on Huskey those

---

[10]The distirct judge characterized § 4A1.2(a)(2) as intending to punish more severely defendants with multiple-offense criminal histories, and as not rewarding those defendants who, for mere administrative convenience, were charged with multiple offenses in the same indictment.  Certainly, we cannot say this is an unreasonable reading of § 4A1.2 and its Application Note 3.  See Allen, 50 F.3d at 297-98.  The district judge, however, overlooked the indications in cases such as Metcalf and Gipson (see discussion supra Part I.A) that merging separate offenses under the same docket number amounts to "consolidation" under the third category of "relatedness" in Application Note 3 to § 4A1.2.

same 192 months.

II.

Huskey argues that the district court erred in using 8,000 pounds of marijuana to calculate his base offense level. He contends the evidence shows that he received between 1,000 and 3,000 kilograms of marijuana in Kansas City between 1992 and 1994 from his source, Jamie Glover ("Glover"). In March, 1994, however, Huskey claims a "rift"[11] developed between him and Glover, after which Glover no longer dealt with Huskey and instead delivered marijuana to Danny Barnes ("Barnes"). Huskey maintains that there is no evidence showing that any marijuana shipments thereafter reached him, and that the court therefore erred in attributing to him the entire amount of the 1992-1995 Kansas City shipments (8,000 pounds). In sum, Huskey contends he should only be held responsible for the approximately 4,100 pounds of marijuana he received directly from Glover between August, 1992 and March, 1994, the amount for which he pled guilty.

In support of the 8,000 pound amount, the government offered the testimony of Internal Revenue Service Special Agent John Cornelius ("Cornelius"). Cornelius had debriefed the major participants in the drug conspiracy and testified about its inner-workings. He confirmed that from August, 1992 to March, 1994, Huskey received from Glover approximately 4,100 pounds of marijuana; Barnes generally took the deliveries for Huskey. After

---

[11]The rift developed when Glover suspected Huskey of stealing proceeds from marijuana sales.

the rift in March, 1994, Cornelius stated that Glover sent another 3,900 pounds to Kansas City. Barnes received these shipments also. Crucially, Cornelius testified Barnes told him that he received *all* 8,000 pounds (including the 3,900 shipped after Huskey and Glover's disagreement) on behalf of Huskey. Based on Cornelius's testimony, the court attributed 8,000 pounds of marijuana to Huskey.[12]

We review the district court's factual findings, such as the quantity of drugs attributable to a defendant, for clear error. United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991); United States v. Manthei, 913 F.2d 1130, 1138 (5th Cir. 1990). In making such a finding, the district judge may consider any information that has "sufficient indicia of reliability to support its probable accuracy," including a probation officer's testimony, a policeman's approximation of unrecovered drugs, and even hearsay. See U.S.S.G. § 6A1.3, p.s.; see also United States v. Cuellar-Flores, 891 F.2d 92, 93 (5th Cir. 1989); Angulo, 927 F.2d at 204-05; Manthei, 913 F.2d at 1138. Ultimately, the district court "need only determine its factual findings at sentencing by a preponderance of the relevant and sufficiently reliable evidence." Angulo, 927 F.2d at 205 (citations and internal quotes omitted).

The "relevant conduct" for which Huskey may be sentenced includes

---

[12]Huskey's base offense level was therefore 34. See U.S.S.G. § 2D1.1(c)(3)(Drug Quantity Table)("At least 3,000 KG but less than 10,000 KG of Marihuana...."). According to Huskey's argument, he is responsible only for 1,000 to 3,000 KG of marijuana, giving him a base offense level of 32. See U.S.S.G. § 2D1.1(c)(4)(Drug Quantity Table).

17

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant....

U.S.S.G. § 1B1.3(a)(1)(A). In attributing to Huskey the entire amount of the 1992-1995 Kansas City shipments, the district judge credited Cornelius's, and implicitly Barnes's, testimony that, although a rift had developed around a year before the final shipments, Barnes continued to take deliveries for Huskey.

Even before the March, 1994 rift, Barnes had taken deliveries from Glover on Huskey's behalf. Further, Cornelius testified that Barnes was only a "small-time dealer," who would have perhaps taken only five pounds or so of marijuana per shipment. It appears unlikely that Barnes absorbed all 3,900 pounds of marijuana sent to Kansas City after March, 1994. In any event, it is undisputed that, between 1992 and 1995, 8,000 pounds of marijuana arrived in Kansas City, and that all of it was delivered to a person (Barnes) who frequently took deliveries for Huskey. Only Huskey's uncorroborated testimony stands to the contrary.

The district judge chose to believe Barnes's assertion that he received the post-March, 1994 shipments of marijuana on Huskey's behalf. The district court has "broad discretion in considering the reliability of the submitted information regarding the quantities of drugs involved." United States v. Martinez-Moncivais, 14 F.3d 1030, 1039 (5th Cir. 1994). Such credibility determinations rest within the province of the trier-of-fact. United States v. Sarasti, 869 F.2d 805, 807 (5th Cir. 1989). Our independent review of the record has not left us with the "definite

18

and firm conviction" that the sentencing judge erred in attributing 8,000 pounds of marijuana to Huskey.  See United States v. Mitchell, 964 F.2d 454, 457-58 (5th Cir. 1992).

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's factual findings as to the amount of marijuana attributable to Huskey.  We find, however, that the district court erred in calculating Huskey's criminal history score and therefore must REVERSE and REMAND for resentencing.

AFFIRMED in part; REVERSED in part and REMANDED for resentencing.