**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

m 01-20435

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SADAR D. CADE,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

January 9, 2002

Before BALDOCK,[*] SMITH, and EMILIO M. GARZA, Circuit Judges.

BOBBY R. BALDOCK, Circuit Judge:

Defendant Sadar D. Cade was the ringleader of an extensive fraudulent check cashing scheme that spanned several years. Cade and his co-conspirators printed counterfeit checks and recruited people to deposit the checks in bank accounts or to pass the checks at retail stores. Cade plead guilty to a single-

---

[*] The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

count indictment charging him with possession of a counterfeit security with intent to deceive in violation of 18 U.S.C. § 513(a). At sentencing, the district court made a criminal history category departure under U.S.S.G. § 4A1.3 based on the court's determination that Cade's criminal history category underrepresented his past criminal conduct. The district court departed upward from a guideline range of twenty-seven to thirty-three months, and sentenced Cade to forty-one months' imprisonment. Cade appeals the upward departure, claiming the district court erred by considering prior sentences used as relevant conduct in calculating his base offense level, see U.S.S.G. § 1B1.3, to make a criminal history category departure under § 4A1.3. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We vacate and remand for re-sentencing.

I.

Cade's extensive contact with law enforcement began during a traffic stop in March 1997. Houston police officers arrested Cade after they discovered a counterfeit driver's license in his possession. In connection with this arrest, Cade plead guilty to forgery in Texas state court in July 1997. The court sentenced Cade to four days in jail.

In December 1997, a Sugarland, Texas police officer observed Cade sitting in a car parked in the handicapped zone at a mall. The officer approached Cade. Cade produced a false driver's license. The officer subsequently discovered Cade

2

was in possession of numerous blank checks, driver's licenses, and a list of bank account holders. Cade told the officer he had been paid $50 to take a girl named "Kelly" to the mall where she would pass counterfeit checks to retail stores. "Kelly" was then supposed to return the merchandise purchased with the counterfeit checks to another store for cash. The State of Texas charged Cade with possession of a counterfeit instrument, and he posted bond. The state court convicted Cade of this offense in March 1999. The court sentenced Cade to one year probation.

In June 1999, while Cade was on probation for the March 1999 conviction, United States Secret Service agents received information from a confidential informant that Cade was continuing to pass counterfeit checks. The Secret Service placed Cade under surveillance, and then detained him for questioning. Cade consented to a search of his person, which yielded four counterfeit Texas driver's licenses, all of which bore Cade's photograph, and numerous counterfeit checks from various banks. State authorities again arrested Cade, this time charging him with tampering with a government record and forgery. Cade again posted bond. In February 2000, the Texas state court convicted Cade of the June 1999 offenses. The court sentenced Cade to four years incarceration for tampering with a government record, and two years incarceration for forgery, the sentences to run concurrently.

Prior to that conviction and sentence, a security video tape showed Cade

3

cashing two counterfeit checks at Casino Money Centers in Louisiana in November 1999. Cade was on bond for the June 1999 charges when he passed these two counterfeit checks. Authorities arrested Cade yet again in December 1999. Cade had in his possession counterfeit driver's licenses and six blank counterfeit checks.

While Cade was serving his state sentence, a federal grand jury charged Cade with possession of a counterfeit security in violation of 18 U.S.C. § 513(a). The indictment arose out of a May 1998 incident, in which Cade supplied a counterfeit check in the amount of $10,000 to his girlfriend, who in turn deposited the check at a bank, and later withdrew the funds. Cade committed this offense while on bond and awaiting trial for the December 1997 possession of a counterfeit instrument charge. As a result of the federal indictment, the State of Texas dismissed four other state charges arising out of Cade's December 1999 arrest.[1]

---

[1] The following time line summarizes Cade's activities:

1. March 1997: Houston police arrest Cade for possession of a counterfeit driver's license.
2. July 1997: Cade pleads guilty to forgery for #1. Sentenced to four days in jail.
3. December 1997: Sugarland police officers arrest Cade at a shopping mall for possession of a counterfeit instrument. Cade posts bond.
4. May 1998: While on bond and awaiting trial for #3, Cade supplies a $10,000 counterfeit check to his girlfriend, who deposited the check and then withdrew

(continued...)

4

II.

Cade pled guilty to the federal indictment, and the United States Probation Office prepared a pre-sentence report (PSR) based on the 1998 Sentencing Guidelines. The PSR set Cade's base offense level at six pursuant to U.S.S.G. § 2F1.1. The PSR considered the March 1999 and February 2000 state sentences as relevant conduct to the instant federal offense under U.S.S.G. § 1B1.3. The PSR thus used the state convictions' underlying facts to adjust the offense level for Cade's instant offense. Based on these facts, the PSR increased Cade's offense level by the following: (1) nine levels under U.S.S.G. § 2F1.1(b)(1)(J) because the total loss from Cade's counterfeit check scheme exceeded $400,000; (2) two levels under § 2F1.1(b)(2) because the offense involved more than

---

[1](...continued)
the funds. This is the basis of the federal indictment for the instant offense (see #10).

4. March 1999: State court convicts Cade of #3, and sentences him to one year probation.
5. June 1999: While still on probation from #3, state authorities arrest Cade after secret service agents search Cade and find counterfeit driver's licenses and checks. Cade posts bond.
6. November 1999: While still on bond for #5, a security tape at a Louisiana business shows Cade cashing two counterfeit checks.
7. December 1999: State authorities arrest Cade. Cade has in his possession numerous counterfeit driver's licenses and blank counterfeit checks.
8. February 2000: State court convicts Cade of #5. Sentenced to four years incarceration for tampering with a government record, and two years incarceration for forgery, to run concurrently.
9. July 2000: While serving his sentence on #8, a federal grand jury charges Cade with possession of a counterfeit security, the instant offense.
10. September 2000: Cade pleads guilty to #9.

5

minimal planning and more than one victim; and (3) four levels under § 3B1.1(a) because Cade was an organizer or leader of a criminal activity involving five or more participants. The PSR reduced the base offense level by two for acceptance of responsibility under § 3E1.1(a), resulting in a total offense level of nineteen.

The PSR calculated only one criminal history point for Cade's July 1997 sentence of four days imprisonment for forgery. The PSR did not include in Cade's criminal history any of his other state sentences because pursuant to U.S.S.G. § 4A1.2, sentences used as relevant conduct to adjust the offense level for the offense of conviction cannot also be used to determine the criminal history category. Cade's uncounted sentences included his March 1999 sentence for possession of a counterfeit instrument, and his February 2000 sentences for tampering with a government record and forgery. Because the PSR did not include these sentences in Cade's criminal history calculation, the PSR placed Cade in criminal history category I.

An offense level of nineteen and a criminal history category of I established a sentencing range of thirty to thirty-seven months. The PSR suggested that an upward departure under U.S.S.G. § 4A1.3 may be warranted because a criminal history category of I did not adequately reflect the seriousness of Cade's past criminal conduct or the likelihood that he would commit future crimes. Specifically, the PSR noted that Cade had continued to print and pass counterfeit checks while he was (1) on bond after his arrest in December 1997 for

6

possession of a counterfeit instrument; (2) serving his March 1999 sentence of probation for possession of a counterfeit instrument; and (3) on bond after his arrest in June 1999 for tampering with a government record and forgery.

The Government filed a motion for an upward departure under § 4A1.3, arguing that–

> Cade's prior sentences that are not used in calculating the criminal history category . . ., his continued criminal activity while on both pre-trial release and probation, the dismissal of other charges as a result of his Federal conviction and the commission of the instant offense while on bond for another offense are all considerations that warrant an upward departure.

Cade filed objections to the PSR, claiming he deserved a three-level adjustment for acceptance of responsibility. Cade also argued that his other state sentences should not be used as the basis of an upward departure because the court considered them in setting his offense level, and thus the sentencing range as calculated adequately addressed the seriousness of his offense. An addendum to the PSR responded that including this conduct in the offense level alone did not consider the fact that Cade committed several criminal acts while he was on bond and probation.

At sentencing, the district court granted Cade's motion for a three-level adjustment for acceptance of responsibility, resulting in an offense level of eighteen, a criminal history category of I, and a guideline range of twenty-seven to thirty-three months. The court then granted the Government's motion for an

upward departure, and departed upward under U.S.S.G. § 4A1.3, finding that "the defendant's criminal history category significantly under-represents the defendant's criminal history and the likelihood that he will commit future crimes." The district court measured the extent of its departure by the criminal history category that would have applied had Cade's prior criminal convictions been counted:

> [T]he Court concludes that the defendant's two prior criminal convictions, if they had [not] been considered as relevant conduct, would have resulted in three additional criminal history points, and that an additional two criminal history points would have been assessed for being under supervision while continuing to commit the current offense. This would give the defendant six total criminal history points which would put him in criminal history category three. If he's in criminal history category three, his range would be 33 to 41 months in prison. So I'm going to consider him as if it were a total offense level of 18, a criminal history category of 3, and a range of 33 to 41 months.

The court sentenced Cade at the top of the range to forty-one months' imprisonment, three years supervised release, and assessed $5,662.06 in restitution. Cade appeals, arguing that because the district court considered the state sentences as relevant conduct to adjust his offense level, the court abused its discretion by also relying on the sentences to make an upward criminal history category departure.

III.

We will uphold a defendant's sentence under the sentencing guidelines

8

unless he demonstrates the sentencing court imposed the sentence in violation of the law, as a result of an incorrect application of the guidelines, or if the sentence is outside the applicable guideline range and is unreasonable.  See 18 U.S.C. § 3742(f); United States v. Morrow, 177 F.3d 272, 300 (5th Cir. 1999).  We review the district court's decision to depart from the guideline range for an abuse of discretion.  See Koon v. United States, 518 U.S. 81, 99-100 (1996).  A district court abuses its discretion, and incorrectly applies the guidelines, where it relies on an invalid departure ground.  See id. at 100; Williams v. United States, 503 U.S. 193, 200 (1992).  "Whether a factor is a permissible basis for departure is a question of law we review de novo."  United States v. Reyes, 239 F.3d 722, 744 (5th Cir. 2001), cert. denied sub nom. Maldonado v. United States, 121 S. Ct. 2618 (2001).

The key issue in this case is whether the district court relied upon permissible factors in departing upward under the sentencing guidelines.  See Threadgill, 172 F.3d 357, 374 (5th Cir. 1999).  Sentencing guidelines § 4A1.3, entitled "Adequacy of Criminal History Category," permits a district court to depart from the guidelines if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other

crimes."[2]  The "reliable information" may include, but is not limited to, "prior

sentence(s) not used in computing the criminal history."  U.S.S.G. § 4A1.3(a).

Section 4A1.2 defines a "prior sentence" as "any sentence previously imposed . .

. for conduct not part of the instant offense."  U.S.S.G. § 4A1.2(a)(1).  The

commentary to § 4A1.2 elaborates that conduct is part of the instant offense if it

is "relevant conduct to the instant offense under the provisions of § 1B1.3

(Relevant Conduct)."  U.S.S.G. § 4A1.2 cmt. n.1.[3]  Pursuant to § 1B1.3, relevant

_____

[2]  Section 4A1.3 is a policy statement.  Policy statements may bind the federal courts with equal force as the guidelines.  See Williams v. United States, 503 U.S. 193, 201 (1992) ("[U]se of a departure ground prohibited by a policy statement can be an 'incorrect application' of the Guidelines under § 3742(f)(1) . . . .").  We have held, however, that some policy statements are advisory only.  See United States v. Montez, 952 F.2d 854, 859 (5th Cir. 1992) (suggesting that Chapter 7 of the sentencing guidelines regarding revocation of supervised release is advisory only); United States v. Headrick, 963 F.2d 777, 782 (5th Cir. 1992) (holding that a district court must consider the policy statements of Chapter 7, but these policy statements are advisory only).  The Supreme Court's treatment of § 4A1.3 in Williams forecloses any suggestion that § 4A1.3 is the type of Headrick policy statement which is advisory only.  In Williams, the Supreme Court held that failure to follow § 4A1.3 resulted in a sentence that was "imposed as a result of an incorrect application of the sentencing guidelines."  Williams, 503 U.S. at 200-01.  Consequently, § 4A1.3 is the type of policy statement which has the force of a guideline.  See Headrick, 963 F.2d at 781 ("Thus, although policy statements generally do not have the force of guidelines, particular policy statements may carry such force when they inform the application of a particular guideline or statute.").

[3]  "The commentary to the sentencing guidelines 'must be given controlling weight unless it is plainly erroneous or inconsistent' with the guidelines."  United States v. Smith, 184 F.3d 415, 417-18 (5th Cir. 1999) (quoting Stinson v. United States, 508 U.S. 36, 42-43 (1993)); but see United States v. Mathena, 23 F.3d 87, 93 (5th Cir. 1994) (concluding that Stinson does not apply to Chapter 7 of the
(continued...)

10

conduct includes all acts and omissions the defendant committed during the course of committing the offense of conviction.

Pursuant to § 1B1.3, the district court considered Cade's state sentences as relevant conduct to the instant offense to calculate Cade's offense level, increasing Cade's offense level to reflect the amount of loss, number of victims, and Cade's role as the ringleader of an extensive criminal operation. Pursuant to § 4A1.2, the district court could not then also include the state sentences in Cade's criminal history score because, as relevant conduct, they were not "prior sentences" as defined by § 4A1.2. The district court, however, used the relevant conduct state sentences as the basis for a criminal history category departure under § 4A1.3. Cade argues the district court erred in departing on this basis. Cade asserts that because the state convictions are relevant conduct to the instant offense, they are not "prior sentences" upon which the district court could base a criminal history category departure.

The Eleventh Circuit recently dealt with this precise issue in United States v. Hunerlach, 258 F.3d 1282 (11th Cir. 2001). In ruling for the defendant, the Eleventh Circuit held that the definition of the term "prior sentence" in § 4A1.2 controls the meaning of the term in § 4A1.3: "prior sentence" does not include

_____

[3](...continued)
guidelines because commentary and policy statements in Chapter 7 do not interpret or explain a guideline).

11

relevant conduct. Thus, when a district court determines that a sentence is relevant conduct to the instant offense, and considers it as a factor in adjusting the offense level, such sentence cannot then be considered as a basis for a criminal history category departure under § 4A1.3(a). See Hunerlach, 258 F.3d at 1286-87. Other Circuits have suggested in dicta or in unpublished opinions that they would employ a similar analysis. See United States v. Baird, 109 F.3d 856, 863 n.4 (3d Cir. 1997) (suggesting in dicta that a criminal history departure under § 4A1.3 would be inappropriate where the dismissed counts were part of the same criminal activity as the offense conduct); United States v. Washburn, 57 F.3d 1072, 1995 WL 351331, at *2 (6th Cir. 1995) (unpublished) (noting that if a criminal act was part of the same course of conduct as the offense of conviction, then, as a matter of law, it is an impermissible ground upon which to base a criminal history departure under § 4A1.3); United States v. Jones, 948 F.2d 732, 737 n.11 (D.C. Cir. 1991) (stating that if the defendant's embezzlement was relevant conduct under § 1B1.3, then, "as a matter of law, it was an impermissible ground upon which to base a criminal history departure"); United States v. Kim, 896 F.2d 678, 683 (2d Cir. 1990) ("By focusing on 'prior' misconduct, the Commission was obviously contemplating acts not relevant to the offense of conviction, since those acts would enter into the 'relevant conduct' analysis used to determine the base offense level and specific offense characteristics.").

12

We find the Eleventh Circuit's reasoning persuasive. Simply put, relevant conduct is part of the instant offense, see U.S.S.G. § 1B1.1,[4] and therefore is not a "prior sentence" under § 4A1.3(a). In Threadgill, 172 F.3d at 374-75, we explained that in making the determination of whether a departure factor is permissible, we must categorize the factor as forbidden, encouraged, discouraged, or unmentioned by the Sentencing Guidelines. If the factor is expressly forbidden, the district court is "completely precluded from using it as a basis for departure." Id. at 374. Relying on relevant conduct sentences to upwardly depart under § 4A1.3(a) is a forbidden factor. Although § 4A1.3 states that the district court is not limited to the listed factors, § 4A1.3(a) would be meaningless if we did not read the section as forbidding the district court from considering relevant conduct sentences. Section 4A1.3(a) states that the district court may consider "prior sentences not used in computing the criminal history." Prior sentences and relevant conduct are defined as mutually exclusive under § 4A1.2. If the district court may consider "prior sentences," then by negative implication, the district court may not consider relevant conduct. If the Sentencing Commission intended to allow the district court to consider both prior sentences and relevant conduct, § 4A1.3 would simply state that the district court may consider all of the

_____

[4] The commentary to § 1B1.3 defines the term "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 . . . unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1(l). Thus, the instant "offense" includes all relevant conduct.

13

defendant's criminal conduct, without reference to "prior sentences," a term with a specified meaning in Chapter 4. Thus, we hold that if the district court uses sentences as relevant conduct, the district court cannot use those same sentences as the basis of a criminal history category departure under § 4A1.3(a).

Our holding in United States v. Ashburn, 38 F.3d 803 (5th Cir. 1994) (en banc) is not to the contrary. In Ashburn, we held that a district court may use "prior similar adult criminal conduct" that is the subject of counts dismissed pursuant to a plea agreement to justify an upward departure under § 4A1.3(e). We stated in dicta that "prior" in this context means "prior to sentencing." See id. at 807 n.14. In Ashburn, however, the dismissed counts were not considered as relevant conduct in setting the offense level. See id. at 806 n.4 (noting that as non-groupable offenses, "the dismissed counts could not be considered in the offense level calculation under the relevant conduct provision."); see also Baird, 109 F.3d at 863 n.4 (agreeing with Ashburn that dismissed counts may be considered for a departure, but suggesting that relevant conduct may not be the basis of a § 4A1.3 departure). Because the dismissed counts in Ashburn were not relevant conduct, the district court properly could consider the counts as past criminal conduct.

Here, the district court considered Cade's state sentences as relevant conduct under § 1B1.3. The court then also used these same sentences to depart upward under § 4A1.3(a) by treating the sentences as part of Cade's criminal

history.[5] By expressly relying on sentences considered as relevant conduct to support a criminal history category departure, the district court misapplied the guidelines. See Hunerlach, 258 F.3d at 1287. Once we have determined the district court misapplied the guidelines, remand is appropriate unless we conclude, on the record as a whole, that the error was harmless. See Williams v. United States, 503 U.S. 193, 202-03 (1992); see also Koon, 518 U.S. at 113-114 (noting that the appellate court should remand where it is unable to determine whether the district court would have imposed the same sentence if the court had relied on permissible factors alone). The error is harmless only if the party defending the sentence persuades us that the district court would have imposed the same sentence absent the erroneous factor. See Williams, 503 U.S. at 202-03. The Government has not done so. Because the district court explicitly relied upon Cade's relevant conduct sentences to measure the extent of its departure, we are not convinced the district court would depart to the same sentence based on

---

[5] The district court stated that if it had not considered Cade's prior criminal convictions as relevant conduct, the sentences would have resulted in three additional criminal history points, and the court would have assessed an additional two criminal history points for Cade being under supervision while committing the current offense. Thus, the district court would have assigned Cade six total criminal history points, putting him in criminal history category three, with a guideline range of thirty-three to forty-one months. Based on these calculations, the district court stated, "So I'm going to consider him as if it were a total offense level of 18, a criminal history category of 3, and a range of 33 to 41 months."

15

permissible factors alone.  Accordingly, we vacate and remand for re-sentencing.[6]

REMANDED.

---

[6] We express no opinion as to whether on remand the district court could properly depart upward pursuant to other provisions in § 4A1.3 based upon the facts of this case.