Revised February 28, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-51142

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

FREEMAN CHARLES OUTLAW, JR.

Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Texas

_____

January 27, 2003

Before KING, Chief Judge, and DEMOSS and CLEMENT, Circuit Judges.

KING, Chief Judge:

This case requires us to review the district court's denial of the Defendant's motion to suppress evidence claimed to be the "fruit" of an unreliable canine alert and improper detention and the district court's refusal to award the Defendant an additional one-level reduction from his base offense level for acceptance of responsibility. We affirm the denial of the Defendant's pre-trial motion but vacate the Defendant's sentence and remand for resentencing.

**FACTS AND COURSE OF PROCEEDINGS**

The facts here are largely undisputed.  On April 21, 2000, border patrol agents at the Sierra Blanca checkpoint (a secondary inspection station) conducted a routine citizenship status check of passengers aboard a commercial Greyhound bus.  Defendant Freeman Charles Outlaw was a passenger aboard this bus.  While an agent conducted the status check inside the bus, another agent used his drug-detecting canine ("Gerri") to sniff the luggage in the bin beneath the bus.  The dog alerted to a black, hard-shelled suitcase bearing a claim tag with the name "O. Freeman."  After none of the passengers came forward to claim the suitcase, the agents conducted a physical inspection of the passengers' tickets to determine the suitcase's owner.  As a result of this inspection, Outlaw was identified as having the ticket matching the claim stub for the suitcase and was asked to step off the bus.

Outlaw identified the suitcase as his own and agreed to allow agents to search the suitcase.  After prying the lock open with a pocket knife (because Outlaw did not have the combination to the suitcase's lock), the agents uncovered two, one-gallon plastic jars containing what field tests later revealed to be phencyclidine ("PCP").

Outlaw was thereafter charged with possession with the intent to distribute 100 grams or more of PCP and one kilogram or more of

2

a mixture or substance containing a detectable amount of PCP in violation of 21 U.S.C. § 841(a)(1).  Outlaw moved to suppress the controlled substances found in his suitcase, any other physical evidence found in his suitcase and his post-arrest statements.  On March 15, 2001, after conducting a de novo review of the magistrate judge's report and recommendation, the district court denied Outlaw's motion to suppress.

Outlaw thereafter entered a conditional plea of guilty and was sentenced by the trial court.  At the sentencing hearing, the district court declined to award Outlaw an additional one-level reduction from his base offense level for acceptance of responsibility under United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(b).

Outlaw appeals the district court's pre-trial denial of his motion to suppress and appeals the district court's refusal to award him an additional one-level reduction under U.S.S.G. § 3E1.1(b).

## II.

### ANALYSIS OF OUTLAW'S MOTION TO SUPPRESS

We have stated the general principle that immigration inspection detentions at a fixed checkpoint such as Sierra Blanca should be extended "based [only] upon sufficient individualized suspicion."  United States v. Machuca-Barrera, 261 F.3d 425, 434 (5th Cir. 2001).  Outlaw attempts to use this general principle to

3

bolster his opposition to the district court's pre-trial order denying his motion to suppress. Specifically, he argues the denial of his motion to suppress was erroneous because the canine alert here was unreliable and the border agent was unreasonable in relying on it.

The "'standard of review for a motion to suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law.'" United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995) (quoting United States v. Alvarez, 6 F.3d 287, 289 (5th Cir. 1993)). The district court's conclusions of law, including whether there was reasonable suspicion to extend the detention, however, are reviewed de novo. United States v. Valadez, 267 F.3d 395, 397 (5th Cir. 2001); United States v. Jacquinot, 258 F.3d 423, 427 (5th Cir. 2001).

After a thorough review of the testimony and evidence before it, the district court found the canine alert to be reliable and concluded that "the officer had a reasonable suspicion that the suitcase contained some type of contraband" such that an inspection of the passengers' tickets in order to identify the owner of the suitcase was proper. We find no clear error in the district court's factual finding that the canine alert was reliable and therefore uphold the district court's ultimate conclusion regarding the reasonable suspicion of the border agent.

4

It is undisputed that this drug-detecting team successfully completed all standard training procedures for border patrol drug-detecting teams and that this canine was certified to detect a variety of narcotics, including marijuana and its derivatives, cocaine and its derivatives, heroin and its derivatives and methamphetamine.[1] That the suitcase the canine alerted to later turned out to contain PCP, a drug the dog was not trained to detect, simply does not vitiate the agent's reasonable suspicion under these facts. See, e.g., United States v. McCranie, 703 F.2d 1213, 1218 (10th Cir. 1983) (holding that an alert by an explosives-sniffing dog not formally trained to detect drugs nonetheless created reasonable suspicion that the defendant's suitcase contained contraband); United States v. Robinson, 707 F.2d 811, 815 (4th Cir. 1983) ("His [the dog's] initial detection [] was sufficient to establish probable cause for a search for controlled substances – the fact that a different controlled substance was actually discovered does not vitiate the legality of the search."); United States v. Viera, 644 F.2d 509, 511 (5th Cir. Unit B May 1981) ("It is true that the dogs were not trained to react to quaaludes, and that the discovery of the quaaludes can in this

---

[1]  At the evidentiary hearing on Outlaw's motion to suppress, Agent Joe Navarro, Gerri's handler, described the training procedures that he and Gerri completed.  Gerri completed approximately four weeks of training at the United States Border Patrol National Canine Facility in El Paso, Texas.  Gerri was then paired with Navarro for an additional two-week  team training procedure.  On March 15, 2000, the team successfully passed a certification test before being placed in the field.

respect be characterized as fortuitous. However, that conclusion is not grounds for suppression of the evidence."); United States v. Johnson, 660 F.2d 21, 23 (2d Cir. 1981) (rejecting appellant's argument that probable cause is not established when a dog alerts on only the residual odors of a drug). On this record, we affirm the district court's order insofar as it holds that sufficient reasonable and individualized suspicion existed to support the inspection of the bus passengers' tickets and to thereafter question Outlaw, whose claim ticket matched that of the suitcase believed to contain contraband.[2]

### III.

### ANALYSIS OF OUTLAW'S SENTENCE

---

[2]  While Outlaw urges us to also affirm the district court's order insofar as it holds that a defendant has a general right in this circuit to challenge the training and reliability of a canine inspection team, we decline to do so here. The question before us is not whether a dog sniff can establish probable cause in a warrantless search without showing evidence of a dog's training and reliability. Rather, the question presented to this court on appeal is whether, on this record, the district court erred in concluding that the dog's handler had a reasonable suspicion to extend the detention. After permitting Outlaw to proffer evidence challenging the adequacy of the training received by this canine inspection team, the reliability of this canine, and the general record-keeping procedures of the Border Patrol regarding canine "false alerts," the district court found this canine alert to be reliable and thus ultimately concluded that the agent handler was reasonable in basing his suspicion on the alert. As stated, our review on appeal is thus limited to whether the district court erred in making these findings.

Outlaw maintains the district court misapplied the "acceptance of responsibility" guideline by declining to award him an additional one-level reduction under U.S.S.G. § 3E1.1(b).  "Because trial courts are in a unique position to evaluate whether the defendant has demonstrated acceptance of responsibility, a district court's finding on acceptance of responsibility is examined for clear error but under a standard of review even more deferential than a pure 'clearly erroneous' standard."  United States v. Cano-Guel, 167 F.3d 900, 906 (5th Cir. 1999) (internal citation and quotation omitted); see also United States v. Leal-Mendoza, 281 F.3d 473, 475 (5th Cir. 2002).  However, if this court determines that the district court misapplied the guidelines, remand is appropriate unless this court concludes, on the record as a whole, that the error is harmless.  United States v. Cade, 279 F.3d 265, 273 (5th Cir. 2002) ("The error is harmless only if the party defending the sentence persuades us that the district court would have imposed the same sentence absent the erroneous factor.").

At sentencing, the district court awarded Outlaw a two-level reduction from his base offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a) ("subsection (a)"), which provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."  U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) (2001).  Over Outlaw's objection, however, the district court declined to award Outlaw an additional one-level reduction under U.S.S.G. § 3E1.1(b)

7

("subsection (b)") of the same guideline section, which instructs the court to reduce the offense level by a third point if certain conditions are met. Specifically, the guideline states:

> (b) If the defendant qualified for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
>
>> (1) timely providing complete information to the government concerning his own involvement in the offense; or
>> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
>
> decrease the offense level by 1 additional level.

U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(b) (2001).

Many courts, including ours, have discussed the interplay between subsection (a) and subsection (b). Because it is important to the issues in this case, we summarize a few underlying principles set forth in the jurisprudence discussing these subsections before moving to the facts here. First, a district court lacks discretion to deny the additional one-level reduction under subsection (b) if the defendant is found to have accepted responsibility under subsection (a), the offense level prior to this two-level reduction is sixteen or greater, and the defendant

8

has complied with the conditions specified in either subsection (b)(1) or subsection (b)(2).  See United States v. Williams, 74 F.3d 654, 656 (5th Cir. 1996) ("If the defendant satisfied all three prongs of the test, the district court is 'without any sentencing discretion' to deny the additional one-level decrease.") (quoting United States v. Mills, 9 F.3d 1132, 1138-39 (5th Cir. 1993)); United States v. Tello, 9 F.3d 1119, 1129 (5th Cir. 1993) (discussing subsection (b) of § 3E1.1, added in 1992, and stating that "[t]hat imperative clause directs the sentencing court" to decrease if either subsection (b)(1) or subsection (b)(2) are met) (emphasis in original).

Second, although subsection (b) is part of the "acceptance of responsibility" guideline, the measure of a defendant's acceptance of guilt or contrition is generally irrelevant to the subsection (b) inquiry.  Rather, while the key inquiry for purposes of subsection (a) is whether the defendant has truly demonstrated contrition, once the district court finds the defendant evinces adequate acceptance of his guilt, the inquiry under subsection (b) focuses instead on the functional issues of timeliness and efficiency, with timeliness being "at the very heart of the third element, assisting authorities."  Tello, 9 F.3d at 1127; see also United States v. De Leon Ruiz, 47 F.3d 452, 455 (1st Cir. 1995) (discussing the two-fold nature of the reductions under subsections (a) and (b)); cf. Williams, 74 F.3d at 656 (stating that subsection (b) "defines timely acceptance in functional, not exclusively

9

temporal terms"). Comment 6 to the guideline elaborates on the importance of timeliness (not contrition or acceptance of guilt) to the subsection (b) inquiry. It states that "[t]he timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case." U.S. SENTENCING GUIDELINES § 3E1.1(b), cmt. 6 (2001) (emphasis added).

Third, the guideline provides an alternative test under subsection (b) to control whether a defendant is entitled to an additional one-point reduction. A defendant awarded the two-level reduction (whose base offense level before this award is sixteen or greater) must be awarded an additional one-level reduction if he either timely provides complete information to the government concerning his own involvement in the offense, or he timely notifies the authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and the court to allocate its resources efficiently. This dual inquiry under subsection (b) has created two separate classes of cases – one class interpreting subsection (b)(1) and one class interpreting subsection (b)(2). Those interpreting subsection (b)(1) focus on the timeliness and completion of the information (regarding the defendant's own conduct) that the defendant provides the authorities. See, e.g., United States v. Brack, 188 F.3d 748, 765 (7th Cir. 1999) (discussing the focus of the inquiry under

10

(b)(1) as that of completeness and timing and upholding the factual finding of the district court that the defendant's cooperation "came too late to qualify for an additional acceptance of responsibility reduction"); United States v. Lancaster, 112 F.3d 156, 158 (4th Cir. 1997) ("The key inquiry in determining whether a defendant qualifies for a reduction under [subsection (b)(1)] is whether the defendant provides information in sufficient time to aid the Government in the investigation or prosecution of the case."); United States v. Eyler, 67 F.3d 1386, 1391 (9th Cir. 1995) (rejecting the argument that the defendant was not entitled to a reduction under this subsection because the information he provided to the authorities was readily available to the police). Those interpreting subsection (b)(2) instead focus on whether the defendant notifies the government of his plan to plead guilty such that the government is saved the time and expense of preparing for trial and the court is given sufficient time to reschedule its calendar. See, e.g., United States v. Chee, 110 F.3d 1489, 1495 (9th Cir. 1997) ("Only early and consistent cooperation which saves the government from the rigors of trial preparation and jury selection merits the assistance reduction."); United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995) (finding no clear error in the denial of a subsection (b)(2) reduction where the defendant did not timely notify the government of his intent to plead guilty and the government "had essentially already completed its preparations for trial"); United States v. Kimple, 27 F.3d 1409,

11

1413 (9th Cir. 1994) ("[A] defendant who pleads guilty on the eve of trial is not entitled to the reduction for timely acceptance of responsibility under [subsection (b)(2)]."); United States v. Hopper, 27 F.3d 378, 385 (9th Cir. 1994) ("[I]f either the prosecution is substantially prepared to present its case or the court has not been given sufficient time to reschedule its calendar, then the defendant is not entitled to an additional one-level reduction under [subsection (b)(2)].").

As an overlay to these general principles, the commentary to this guideline explains that a defendant's entitlement to a one-level reduction is "context specific." See U.S. SENTENCING GUIDELINES § 3E1.1, cmt. 6 (2001). Moreover, because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," his "determination . . . is entitled to great deference on review." Id. at cmt. 5. This overlay (in addition to the general principles stated above) is important as we turn to the specifics of this case.

The government contends that the certain cases in this circuit interpreting the "acceptance of responsibility" guideline are in tension. Specifically, the government argues that for our opinion in United States v. Leal-Mendoza, 281 F.3d 473 (5th Cir. 2002), to support Outlaw's contention that he is entitled to a one-level reduction, our opinion in United States v. Gonzales, 19 F.3d 982 (5th Cir. 1994), must be limited. We disagree.

12

In <u>Leal-Mendoza</u>, the district court declined to apply the additional one-level reduction under subsection (b) for acceptance of responsibility even though it determined that the defendant qualified for the two-level reduction for acceptance of responsibility under subsection (a). <u>Leal-Mendoza</u>, 281 F.3d at 475-77. The district court based its decision on the defendant's pursuit of a motion to suppress evidence, stating that "[t]he facts here, to me, don't justify even a 2-point reduction. But the policy of the court is to give it[,] [so] I'm going to give them the 2-point reduction." <u>Id.</u> at 475.

We found that the district court misapplied the guidelines, and emphatically "reject[ed] the proposition that a sentencing judge's reluctance in awarding the two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) can have any bearing on the independent inquiry of whether to award another level reduction under U.S.S.G. § 3E1.1(b)." <u>Id.</u> We further held that "[w]hether a defendant qualifies for the two-level reduction in subsection (a) is an all or nothing proposition: once the district court decides that a defendant is entitled to the subsection (a) reduction, the only inquiries remaining under subsection (b) are the last two prongs of the test." <u>Id.</u> at 476.

This holding simply restated the general principle set forth by our court in <u>United States v. Tello</u>, 9 F.3d 1119 (5th Cir. 1993). There, despite a finding under U.S.S.G. § 3C1.1 that the defendant obstructed justice by lying to the probation officer, the

13

district court awarded the defendant a two-level decrease for acceptance of responsibility under subsection (a). However, it thereafter declined to award the defendant an additional one-level reduction under subsection (b). Id. at 1121. In so doing, it expressly found that the defendant's obstruction of justice caused the investigating officer to expend more time and effort on the case than he otherwise might have and the defendant was thus not entitled to an additional one-level reduction. Id. at 1122. We vacated the sentence as to this reduction and held that:

> [T]he district court erred in the reason given for denying the extra 1-level reduction of subsection (b) – obstruction of justice. First, that is simply inapposite; as long as obstruction does not cause the prosecution to prepare for trial or prevent the court (as distinguished from the probation office) from managing its calendar efficiently, obstruction of justice is not an element to be considered. When the court granted [the defendant] the basic 2-level reduction for acceptance of responsibility under subsection (a), despite having found obstruction of justice and having increased his offense level by two thereof, obstruction became irrelevant. It evaporated from the sentencing calculus.

Id. at 1128 (emphasis in original).

The factual and procedural context for our holdings in both Leal-Mendoza and Tello required us to vacate the defendants' sentences based on the district court's misapplication of the "acceptance of responsibility" guideline. Our decision in each case turned on the general principle that once a defendant "clearly demonstrates acceptance of responsibility" under subsection (a), the analysis under subsection (b) is explicitly limited to the

14

questions under subsection (b)(1) and (b)(2). <u>Tello</u>, 9 F.3d at 1128. In contrast, the district court in <u>Gonzales</u> correctly applied the guideline and made the appropriate inquiry under subsection (b)(2).[3] On appeal, we found evidence in the record to support the district court's factual finding that the hearing on the defendant's motion to suppress (which was conducted at the beginning of a full bench trial) was the equivalent of a full trial and required the government to prepare fully for a trial on the merits and the court to allocate its resources as though a full trial on the merits was conducted. 19 F.3d at 982. Thus, based on that specific factual context, with great deference to the district court's factual findings made in response to the appropriate inquiry under subsection (b)(2), we affirmed the sentence. <u>Id.</u>

We simply do not see friction between these cases, nor do we see that <u>Gonzales</u> automatically precludes Outlaw from qualifying for the additional one-level reduction under subsection (b)(2), as argued by the government. The inquiry under this guideline is "context specific," and, because of the "unique position" of the sentencing judge, he is entitled to "great deference." U.S. SENTENCING GUIDELINES § 3E.1.1, cmt. 5, 6 (2001).

Here, both parties agree that the district court based its decision not to award Outlaw an additional one-level reduction solely on Outlaw's decision to file and pursue the motion to

---

[3]   As stated in footnote one, subsection (b)(1) was not at issue in the case. <u>Gonzales</u>, 19 F.3d at 984 n.1.

15

suppress discussed above. However, the transcript of the sentencing hearing offers us little insight into the district court's reasoning for doing so, and <u>both parties agree</u> that the case should be remanded to the district court for further explanation. As did the district court in <u>Leal-Mendoza</u>, the district court may have improperly determined that by filing and pursuing a motion to suppress evidence, Outlaw had only reluctantly accepted responsibility and should thus not get the full benefit of a three-point reduction. However, the district court may instead have found that Outlaw strategically waited in providing assistance to the authorities or in notifying the authorities of his intent to plead guilty and, in so doing, required the government to, in essence, fully prepare for trial. Because, as the parties acknowledge, we cannot tell on the record before us whether the district court considered the relevant questions under subsection (b)(1) and (b)(2) in declining to reduce Outlaw's base offense level an additional point, remand is appropriate unless the government persuades us that "the district court would have imposed the same sentence" anyway. <u>Cade</u>, 279 F.3d at 273.

Here, in addition to the two-point reduction for acceptance of responsibility, the district court further reduced Outlaw's offense level two points for his minor role in the offense. With a Criminal History Category of III and a resulting offense level of thirty, the guideline range for imprisonment was 121-151 months. Outlaw was sentenced at the low end of this range, 121 months. The

government concedes that it cannot demonstrate that the error, if any, is harmless because reducing Outlaw's base offense level to twenty-nine (instead of thirty) results in a guideline range of 108-135 months (rather than 121-151 months), and the district court might obviously choose to sentence Outlaw at the low end of this range. Remand is thus appropriate for the district court to determine whether Outlaw timely provided the authorities with complete information regarding his own involvement in the case (the proper inquiry under subsection (b)(1)) <u>or</u> whether the defendant notified the government and the court of his intent to plead guilty at an early enough time in the proceedings to preclude the government from preparing for trial and to enable the court to avoid unnecessarily expending judicial resources (the proper inquiry under subsection (b)(2)).

## IV.

### CONCLUSION

We AFFIRM the denial of Outlaw's motion to suppress and accordingly AFFIRM Outlaw's conviction. We VACATE Outlaw's sentence and REMAND for resentencing consistent with this opinion.

17