United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 31, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-30647
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAFAEL GARCIA-CAMPOS, also known as Rafael G. Campos,

Defendant-Appellant.

\* \* \* \* \* \*
Consolidated with
No. 04-30742
\* \* \* \* \* \*

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NANCY CAMPOS,

Defendant-Appellant.

\* \* \* \* \* \*
Consolidated with
No. 04-30857
\* \* \* \* \* \*

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN C. MACEDO-CAMPOS, also known as Juan Macedo,
also known as Juan Macedo-Campos

Defendant-Appellant.

--------------------
Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 5:03-CR-50121-3-MPH
--------------------

Before REAVLEY, JOLLY and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[*]

In this consolidated appeal, Rafael Garcia-Campos, his sister Nancy Campos, and their uncle Juan Macedo-Campos appeal from their conditional guilty-plea convictions of conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846. All three defendants moved to suppress the cocaine that was seized from the Chevrolet Suburban in which they were traveling, and, after a single suppression hearing before the magistrate judge, the district court denied the motions. The district court sentenced Garcia-Campos to 120 months in prison, Nancy Campos to 51 months in prison, and Macedo-Campos to 121 months in prison. Each was also sentenced to five years of supervised release.

Pursuant to their conditional pleas, all three defendants challenge the denial of their motions to suppress. In those motions, the defendants had argued that the initial stop of the Suburban had violated their Fourth Amendment rights and that the state trooper who stopped them had unconstitutionally extended his questioning beyond what was necessary to dispel his original reason for stopping them. At that time, they did not explicitly

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

challenge the voluntariness of Macedo-Campos's subsequent consent to a search of his Suburban, except for a contention by Nancy Campos that the allegedly illegal seizure "taints the alleged voluntariness of the consent to search." In their appellate briefs, the defendants no longer argue that the initial stop was invalid. With slight variations in their contentions, they all argue that the duration of the detention unconstitutionally exceeded the reason for the stop and, for the first time on appeal, they specifically contend that Macedo-Campos's consent was obtained involuntarily.

The suppression-hearing evidence, which consisted primarily of the testimony of Louisiana state trooper Sergeant Don Campbell and a videotape of the traffic stop, may be summarized as follows: Sergeant Campbell pulled over Macedo-Campos's Suburban on the afternoon of November 15, 2003, after he observed it cross over the center-line and "fog line" several times, while traveling on eastbound Interstate 20 in northwestern Louisiana. The parties agree that this stop was valid. Macedo-Campos was driving, Garcia-Campos was in the front passenger seat, and Nancy Campos was sitting in a rear seat. After Campbell summoned Macedo-Campos to the rear of the Suburban, Macedo-Campos "fumbled around" while looking for his driver's license. The license was from California although the Suburban had Texas license plates; Macedo-Campos explained that he had only recently moved from California to Houston and had not yet had time to get a new driver's license. Macedo-Campos showed Sergeant Campbell his

"bad" right rear tire, which he said was causing the Suburban to "drift" out of its lane. Campbell believed at that time that Macedo-Campos's explanation of this problem "ma[d]e sense."

Sergeant Campbell continued to question Macedo-Campos, based on his concern that the defendants should replace the tire soon. He thought that Macedo-Campos was "extremely nervous." Macedo-Campos told him that they were traveling to Mississippi, but when asked where in Mississippi, Macedo-Campos "stammered around" before answering "Mississippi City," a town that Campbell did not believe to exist. (The town of Mississippi City was annexed by the city of Gulfport, Mississippi in 1965.) Campbell's suspicions having been raised, he went to the passenger's side window to speak with Garcia-Campos, apparently the best English speaker in the group. Garcia-Campos told him that they were traveling to see friends and relatives in Mississippi, but he could not name the town to which they were traveling and stated that he did not have the friends' and relatives' phone number. Macedo-Campos did not have such a phone number, either. Sergeant Campbell took the defendants' identification cards to his patrol unit and ran a criminal-background check, which turned up nothing. Nonetheless, while in the car, he called in a back-up patrol unit.

Campbell emerged from his patrol unit approximately 10 minutes later and told Macedo-Campos that he needed to get the bad tire repaired, but he did not issue a traffic citation. He simultaneously returned to Macedo-Campos the defendants'

identification cards. Seconds later, Campbell told Macedo-Campos, "I'm still confused about what you're doing," and asked him whether he had any weapons or drugs in the Suburban. When Macedo-Campos said "no," Campbell asked him for consent to search the Suburban, to which Macedo-Campos appeared to agree. Campbell had also brought from his patrol unit a Spanish-language consent-to-search form, which he gave to Macedo-Campos. Macedo-Campos looked over the form for one or two minutes, and, after asking Campbell one question about it, signed the form. Approximately one minute after he signed the form, the back-up trooper arrived. Campbell's ensuing search of the Suburban led to the discovery, of 16 bundles of cocaine weighing approximately 22 pounds, hidden in a compartment under the vehicle's rear-most seat.

"The standard of review for a motion to suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law." United States v. Outlaw, 319 F.3d 701, 704 (5th Cir. 2003) (citations and internal quotation marks omitted). Under Terry v. Ohio, 392 U.S. 1 (1968), "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000) (citing Terry, 392 U.S. at 30). Under Terry's two-pronged test, "[c]ourts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably

related in scope to the circumstances that justified the stop."
United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en
banc) (citing Terry, 392 U.S. at 19-20). "'Reasonable suspicion
must be supported by particular and articulable facts, which,
taken together with rational inferences from those facts,
reasonably warrant an intrusion.'" Goodson, 202 F.3d at 736
(citation omitted). "As a general matter, the decision to stop
an automobile is reasonable where the police have probable cause
to believe that a traffic violation has occurred." Whren v.
United States, 517 U.S. 806, 810 (1996). In the instant appeal,
it is not disputed that Campbell had a specific, articulable
basis for stopping the Suburban. See Terry, 392 U.S. at 21.

Under the second Terry prong, the issue is whether an
officer's actions after legitimately stopping the vehicle were
reasonably related either to the circumstances that justified the
stop or to dispelling his reasonable suspicion developed during
the stop. See Brigham, 382 F.3d at 507. "This is because a
detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop, unless further reasonable
suspicion, supported by articulable facts, emerges." Id. (citing
United States v. Dortch, 199 F.3d 193, 200 (5th Cir. 1999));
Florida v. Royer, 460 U.S. 491, 500 (1983). In a valid traffic
stop, an officer may request a driver's license, insurance
papers, vehicle registration, run a computer check thereon, and
issue a citation. United States v. Shabazz, 993 F.2d 431, 437
(1993). Moreover, the court has "'reject[ed] any notion that a

police officer's questioning [of a detainee during a traffic stop], <u>even on a subject unrelated to the purpose of a stop</u>, is itself a Fourth Amendment violation.'"  <u>Brigham</u>, 382 F.3d at 508 (quoting <u>Shabazz</u>, 993 F.2d at 436) (emphasis in original).  This is because "'detention, not questioning, is the evil at which <u>Terry</u>'s second prong is aimed.'"  <u>Id.</u> (quoting <u>Shabazz</u>, 993 F.3d at 436).  Questioning during a valid stop may involve a "graduated response to emerging facts."  <u>Id.</u> at 509.

The defendants rely heavily on several decisions in which this court has held that the seizure of drugs from vehicles should have been suppressed and in which the searches began as valid traffic stops and involved both a computerized check of the subject's driver's license and registration and detention of the subjects beyond the time necessary to dispel suspicion of wrongdoing.  For one reason or another, these decisions--<u>United States v. Santiago</u>, 310 F.3d 336 (5th Cir. 2002); <u>United States v. Valadez</u>, 267 F.3d 395 (5th Cir. 2001); <u>United States v. Jones</u>, 234 F.3d 234 (5th Cir. 2000); <u>Dortch</u>, <u>supra</u>--are distinguishable from the instant case.  This is mainly because Campbell's questions to the defendants were at least arguably related to a legitimate concern that they replace or repair the Suburban's bad tire and because the <u>Terry</u> stop was not completed until the criminal-background check was finished and Campbell returned the identification cards to Macedo-Campos.

Even if Sergeant Campbell had unconstitutionally extended the traffic stop for a moment after dispelling his suspicions

about Macedo-Campos's erratic driving, a subsequent consent "may, but does not necessarily, dissipate the taint of a [prior] fourth amendment violation." Jones, 234 F.3d at 242 (citation and internal quotation marks omitted). In such a case, the admissibility of the challenged evidence turns on a two-pronged inquiry: "1) whether the consent was voluntarily given; and 2) whether the consent was an independent act of free will." Id. (citation omitted). "'The first prong focuses on coercion, the second on causal connection with the constitutional violation.'" Id. (citation omitted). "'In order to satisfy the consent exception, the government must establish that consent to search was freely and voluntarily given and that the individual who gave consent had authority to do so' and 'must prove by a preponderance of the evidence that consent was voluntary and effective.'" Id. (citation and footnote omitted). This court looks to six factors in reviewing the voluntariness of a consent to search: "1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found." Jones, 234 F.3d at 242 (citing Shabazz, 993 F.2d at 438). No single factor is dispositive. Id.

Only after the suppression hearing have the defendants raised explicit arguments concerning the voluntariness of Macedo-

Campos's consent. Prior to that time, they contended only that the consent was vitiated by the Fourth Amendment violation that allegedly occurred prior that time. This court reviews any arguments not raised before a district court at a suppression hearing for plain error. United States v. Smith, 273 F.3d 629, 632-33 (5th Cir. 2001). To establish plain error, a defendant must show that (1) there was error; (2) the error was plain, that is, "clear" or "obvious"; and (3) the error affected the defendant's substantial rights. See United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc). If all three elements are satisfied, the reviewing court has discretion to correct the error if it affects the fairness, integrity, or public reputation of the judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993).

Because the defendants failed to place the consent issue squarely before the magistrate judge prior to the hearing on their motions to suppress, it is unsurprising that little, if any, evidence regarding the six factors relevant to that issue was presented by either the Government or defendants at the hearing. The evidence that was presented showed that Sergeant Campbell was quite hectoring in questioning the defendants, but does not reflect "coercive police procedures." See Jones, 234 F.3d at 242. The evidence also indicated that Macedo-Campos's comprehension of the English language--and of Campbell's questions--was not very good. Nonetheless, Macedo-Campos appears to have taken his time reading the Spanish-language consent-to-

search form, and he then signed the form.  He has not suggested that he could not read the form.  No specific evidence regarding his education or intelligence was presented.  As the Government argues, Campbell was not required to inform Macedo-Campos of his right to refuse to consent.  See Ohio v. Robinette, 519 U.S. 33, 40 (1996).  Given the inadequacy of the suppression-hearing evidence and the fact that this inadequacy may be ascribed largely to the defendants' failure to squarely argue the consent issue in their suppression motions, the defendants have shown no "clear" or "obvious" error as to the district court's conclusion that Macedo-Campos's consent to the search was voluntary.

Because the defendants have not established that the district court erred in denying their motions to suppress, the convicitions and sentences are AFFIRMED.