# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40311

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HECTOR GUADALUPE LOZANO,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:17-CR-605-1

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:\*

Hector Guadalupe Lozano appeals the district court's denial of his motion to suppress evidence collected from his vehicle that was searched after a drug-sniffing dog alert. We find no error and AFFIRM.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40311

## FACTUAL AND PROCEDURAL BACKGROUND

Hurricane Harvey caused significant damage along the Texas coast when it struck on August 28, 2017. The city of Aransas Pass had been in the storm's destructive path and imposed a curfew from 7:00 p.m. to 7:00 a.m. to reduce looting and other problems. While the curfew was still in effect, Hector Guadalupe Lozano was stopped around midnight while driving his Cadillac Escalade in that city without its headlights on. He was traveling with his common law wife, Laura Cortez.

One of the officers who stopped Lozano asked him for identification and proof of insurance. Lozano claimed that he had none, causing Officer Reyes to ask him to step out of the vehicle. The officer requested permission to search the vehicle, but Lozano declined. In order to allow a search of the database for warrants, Officer Reyes asked Lozano for his information, but Lozano gave an incorrect first name. The initial search therefore incorrectly showed no outstanding warrants. Separately, another officer questioned Cortez, who said Lozano indeed had an outstanding warrant. When confronted with this information, Lozano gave his actual first name and was arrested for being a fugitive who failed to identify himself.

Officer Reyes testified that he decided to impound the Escalade and not let Cortez drive the vehicle home. Officer Reyes requested that a drug dog come to the scene to determine whether there were drugs in the vehicle. A canine unit with the San Patricio County Sheriff's department arrived at the scene. Deputy Olan Brooks brought his canine partner Karr, who performed a free-air sniff of the vehicle. Karr alerted to the presence of contraband at the driver's side front door. The officers searched the Escalade and found 71 bars of Xanax, 10 ecstasy pills, 229 grams of methamphetamine, and 45.8 grams of heroin.

2

No. 18-40311

Lozano was indicted on two federal drug charges: possession with intent to distribute more than 50 grams of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A), and possession with intent to distribute less than 100 grams of heroin, 21 U.S.C. § 841(a)(1), (b)(1)(C).

Lozano moved to suppress the drugs found in his vehicle as the fruit of an unlawful search. The district court held a hearing to address the issue. At the hearing, Deputy Brooks, Karr's handler, testified that Karr was obtained from Worldwide Canine, which trains dogs and handlers. Deputy Brooks took a three-week training program at Worldwide, which included specific training on substance detection. Karr is certified to detect cocaine, marijuana, heroin, methamphetamines, and ecstasy. Deputy Brooks and Karr must be certified annually, and the certification was up to date.

Deputy Brooks testified that Karr does not make false alerts. Deputy Brooks testified that although Karr alerted on multiple occasions when contraband was not thereafter found, he did not believe Karr falsely alerted in those instances. On cross-examination, Deputy Brooks explained why these instances should not be considered errors by the dog. He testified that although Karr made a positive alert 14 times in 2017, drugs were discovered only four times. Of the ten times drugs were not found, Deputy Brooks' forms reflected that in eight, residual marijuana was found. In two others, nothing was found. In one instance where nothing was found, Deputy Brooks explained that the suspect admitted he had "just finished smoking weed" in the vehicle. Deputy Brooks testified that he did not have the marijuana residue tested to confirm that it was indeed marijuana. He testified that this residue is not lab tested because it is not a chargeable amount. The part of the testimony that Lozano seizes upon is when Deputy Brooks stated that Karr will alert to Xanax even though the dog is not certified to alert to that substance. Further, Deputy

3

No. 18-40311

Brooks testified that Karr will alert to Xanax even if there is no other drug present.

In the district court proceeding, Lozano argued that Deputy Brooks' testimony undermined Karr's drug alert reliability and that there was not a sufficient basis to form probable cause. The district court denied the motion to suppress, finding Karr's alert to be reliable. After the denial of the motion, Lozano entered a conditional guilty plea to the first charge, reserving the right to appeal the denial of the motion. On appeal, Lozano argues that the district court erred when it denied his motion to suppress the evidence.

## DISCUSSION

"When reviewing a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions, including the ultimate constitutionality of the actions of law enforcement, de novo." *United States v. Williams*, 880 F.3d 713, 717 (5th Cir. 2018). This court reviews the evidence "in the light most favorable to the prevailing party." *Id.* (quoting *United States v. Zuniga*, 860 F.3d 276, 280 (5th Cir. 2017)). The reliability of a canine alert is a factual finding reviewed for clear error. *See United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003).

Lozano argues that the totality of the circumstances surrounding the search did not establish probable cause to search his vehicle. Specifically, Lozano argues that Deputy Brooks' testimony about Karr's ability to alert to Xanax, as well as the alerts that produced no contraband, undermined Karr's presumptive reliability. Nothing else, he argues, suggested a fair probability that the Escalade contained contraband. Lozano concedes that Karr's certification by a bona fide organization creates a presumption that his alert provided probable cause, but such a presumption may be rebutted through

4

No. 18-40311

cross examination that undermines the dog's reliability. *See Florida v. Harris*, 568 U.S. 237, 246-47 (2013).

Lozano argues that two features of Deputy Brooks' testimony undermine Karr's presumptive reliability. First, of the 14 times Karr alerted in 2017, contraband was found only 4 times, or 29% of the time. Factoring in the time the occupants admitted to smoking marijuana after Karr's alert, Karr's field alert accuracy was not much better. Lozano argues there was no evidence validating the other times Karr alerted, because the alleged residual marijuana was never tested. Second, Deputy Brooks' testimony that Karr alerts to Xanax, even though not trained or certified to do so, undermines Karr's reliability. Because Xanax is often legally prescribed, Lozano argues Karr's alerts are not reliable evidence of contraband.

Having argued that Karr's alert was not presumptively reliable, Lozano then argues that the other circumstances of the traffic stop do not suggest that a reasonably prudent person would believe that a search would reveal contraband or evidence of a crime. Lozano argues that his being out after curfew just before midnight did not suggest other evidence of criminal activity, and that Officer Reyes did not suspect criminal activity. Lozano claims that his lying about his identity was with respect to his outstanding traffic violation warrant, not because he was hiding anything in his vehicle. Lozano also notes that he was well within his rights to refuse a search.

When reviewing Lozano's claims, we repeat that the district court's determination that the canine's alert was reliable is reviewed for clear error. *See Outlaw*, 319 F.3d at 704. When reviewing for clear error on a district court's factual findings based upon live testimony, we will uphold the district court's decision "if there is any reasonable view of the evidence to support it." *United States v. Mendez*, 885 F.3d 899, 908 (5th Cir. 2018) (quoting *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999)).

No. 18-40311

Canine alerts by trained and certified dogs are presumptively reliable. *Harris*, 568 U.S. at 246-47. Further, the district court reasonably could have credited Deputy Brooks' testimony that in many of the alerts that did not result in seizure of contraband, there was either an admission of previous use of drugs by the suspect or residue. An alert without seizure of contraband often will be based on residue or previous use by the occupants. *Id.* at 245-46. Therefore, the district court reasonably could have concluded that Karr reliably alerted on 13 of 14 searches. Furthermore, Deputy Brooks testified that his dog is trained in a controlled environment, which is a "better measure of a dog's reliability." *Id.* at 246.

The evidence undermining reliability of the dog was Deputy Brooks' testimony that Karr will alert to Xanax even though that drug is not necessarily contraband, and there was a substantial quantity of that drug in the vehicle. The district court did not mention that part of Deputy Brooks' testimony in its ruling. No field evidence supported that Karr had ever alerted to Xanax when it was the only substance present. Whatever should be made of Deputy Brooks' statement about Xanax, there was no evidence that the dog either in this situation or previously had alerted in the field solely because of that substance. We cannot conclude that the district court clearly erred when it found Karr's alert reliable.

AFFIRMED.